In The Circuit Court of Jackson County Missouri
Kansas City Division

Quintero Community Association, Inc. *et al*

    Plaintiffs,

v.

Hillcrest Bank *et al*

    Defendant.

Case No. 1016-CV13693

Div 18

FILED
DEPT. OF CIVIL RECORDS
COURT ADMINISTRATOR'S OFFICE
JAN 0 4 2011
CIRCUIT COURT OF JACKSON CO., MO

## Plaintiffs' Motion for Enforcement of Discovery

Pursuant to Local Rule 32.2.5, the plaintiffs move to enforce discovery in this case.

### I. Statement Of Case

This case is about Hillcrest Bank's actions that were intended to cloak Quintero Golf Course, the alter ego of Gary McClung, with a false appearance of financial well being as an ongoing and vital business investment. Hillcrest Bank was a major player and facilitator of McClung's fraud upon investors. Hillcrest Bank financed McClung's golf course venture that was located in Peoria, Arizona. Sometime in late 2006 to early 2007, Quintero Golf & Country Club was substantially in arrears in servicing its debt from loan transactions entered into with Hillcrest Bank. During this time, Hillcrest Bank did not call the note or otherwise declare a default – even though this was contrary to sound banking practices and even though McClung's bad financial condition was well known to the Bank. All the while McClung was still taking in investor monies based upon a Ponzi scheme through fraudulent representations about the viability and financing of the Golf Course.

Hillcrest Bank only declared default on the loans in June of 2009 – about the same time it was being investigated by the Kansas and Federal banking authorities. As to why Hillcrest Bank allowed a 50 plus million dollar investment to dry up and nearly revert to desert, it is related to Hillcrest Bank's own mismanagement and purposeful manipulation of its accounts so as to avoid triggering Federal Deposit

1

Insurance Company scrutiny. The FDIC found that Hillcrest Bank's deferral on calling a default on the loan was contrary to sound banking practices under the Cease and Desist Order issued by the FDIC. Hillcrest Bank did not inform the plaintiffs who were Quintero investors or land owners of the falsehoods made by the Quintero Entities and Gary McClung because calling a default in the Quintero loans would have caused Hillcrest Bank to have an excessive amount of non-performing loans and Hillcrest Bank wanted to avoid revealing to the FDIC its bad financial condition and thus was perfectly content in watching McClung give a false impression of financial viability of the Golf Course development.

Eventually Hillcrest Bank could not conceal its financial condition as related to the Quintero Golf Course. Once the FDIC inspected Hillcrest Bank's books, it was discovered there were numerous and significant banking decisions that were unsound and in violation of federal banking regulations and perhaps contrary to Hillcrest's own internal procedures. Hillcrest Bank's forbearance from enforcement of the Quintero loan was contrary to prudent banking practices. Hillcrest was placed under a cease and desist order by the Federal Deposit Insurance Company in which the FDIC stated that Hillcrest Bank had violated several banking rules including "imprudent lending and collection practices" and that the management "failed to provide adequate supervision over and direction to the management of the bank."

Related to Hillcrest Bank's motivation to avoid FDIC scrutiny, Hillcrest conspired with McClung to represent to the Arizona Department of Real Estate (ADRE) that the development had been completed but this was a lie. In Arizona, every developer of land is required to have a "Public Report" issued by the ADRE. Quintero Golf & Country Club was the developer in the land project that Hillcrest Bank financed. When land is developed, the ADR requires guaranteed financing of the work identified in the Public Report for the benefit of land purchasers through irrevocable letters of credit. McClung, with the full knowledge of Hillcrest, simply lied to the ADRE that the work had been completed in order for Hillcrest Bank to use the dedicated development funds in the letter of credit as an accounting device to show the loan as performing – when it was not.

2

Hillcrest Bank was very aware that the work identified in the Public Report had not been completed – even though McClung created a sham letter to the contrary. Hillcrest Bank knew the work had not been completed from many sources. Not only had consultants who told it the work had not been completed, Hillcrest Bank was well aware that no monies had been released to pay for the work. McClung and Hillcrest Bank cooked up a plan to divert the monies that were to be paid for capital improvements back to Hillcrest Bank to show that the loan was still being serviced by Quintero – thus avoiding FDIC scrutiny: accounting *hocus pocus* in order to deceive the FDIC.

In the Order of Summary Suspension issued by the Arizona Department of Real Estate, the ADR found that the work identified in the Public Report had not been begun or completed even though Gary McClung communicated to Hillcrest Bank that the work had been completed. The ADR Order found that McClung's statement was false and then suspended all land transactions on the subject properties. The investors, including the present plaintiffs, lost approximately 100 million dollars.

Since the filing of the Second Amended Petition, the FDIC took over Hillcrest Bank. The accounts and other assets were sold to Hillcrest Bank, N.A., a newly created bank. What assets remain with Hillcrest Bank during this winding down period is unclear.

## II. Prior Discovery Disputes

The discovery was served with the petitions in May 2010. Hillcrest Bank then filed a Motion to Stay Discovery. The plaintiffs opposed the stay and filed a motion to enforce discovery. On November 18, 2010, the Court denied the defendant's motion to stay discovery and the plaintiffs' motion to enforce discovery.

## III. Discovery sought

The FDIC has taken over Hillcrest Bank. See Ex. 1 (Order of FDIC Receivership from the Office of the State Bank Commissioner Kansas). As the Receiver, the FDIC has communicated to the former Hillcrest Board members that the FDIC intends to make claims against the former board members for misconduct. Ex. 2 (Letter to

3

Board Members alleging misconduct). In anticipation of this claim, the former Hillcrest Board members then absconded without permission documents from the Bank and in particular documents related to the Quintero Golf Course which was the largest account loss the bank suffered. The FDIC sued the lawfirm of Bryan Cave for these documents and alleged that "Certain directors and officers of Hillcrest Bank caused a large amount of copied bank files and records to be provided to Bryan Cave" and that "the copying and/or removal of those records from Hillcrest Bank was improper and unlawful.") There was also an electronic loan file that was created for the real estate loan regarding the Quintero Golf course development in Peoria, Arizona, which was taken by the former board members according to an affidavit of Charlene Gordon, First Vice President of IT Risk Management of Hillcrest Bank, N.A. In her affidavit she stated that "during the week of October 4, 2010, I was instructed by Brian Schneider, who was then president of Hillcrest Bank, to provide Bryan Cave with the Portable Hard Drive containing the full set of file folders copied bank files that had been provided to the FDIC." Entire email boxes of certain employees were also taken by the former board members which are believed to contain communications regarding the Quintero Golf Course.

The discovery sought concerns records regarding the Quintero Golf & Country Club development along with communications of Gary McClung, and the plaintiffs. It concerns internal memorandum of Hillcrest regarding this development which would demonstrate the Bank's knowledge of McClung's conduct and communications.

### IV. Issues Raised By Discovery Dispute

A. Whether Hillcrest Bank's bare objections that material is privileged without any factual showing that any material is privileged as required under the Rules states a valid objection.
B. Whether Hillcrest Bank Should Be Required to Produce the Documents Without Objection.

### V. Citations And Argument Supporting Discovery

An extensive golden rule letter was submitted on December 26, 2010. Ex. 3.The Golden Rule Letter attached to this motion fully and succinctly sets out the plaintiffs' arguments which are incorporated herein as fully set forth.

4

## VI. Sanctions, Attorney Fees, And Costs Sought, If Any

The defendant has had the pending discovery requests since May 2010. Eight months later discovery is no any further down the road due to the defendant's conduct. As speaking to opposing counsel for Hillcrest | FDIC she was unsure of what documents could be produced anyway because of the FDIC takeover and the uncertainties governing same. While not the fault of opposing counsel, the FDIC takeover does not provide an exception to the rules governing discovery as the plaintiffs have a right to their day in court.

"Rule 61.01 authorizes the imposition of sanctions when a party fails to comply with discovery requests." *Harrington v. Harrington,* 153 S.W.3d 315, 318 (Mo. App. 2005); *Hoodenpyle v. Schneider Bailey, Inc.,* 748 S.W.2d 683, 685 (Mo. App. 1988).

/s/ Linus L. Baker

Linus L. Baker 44980
6732 West 185th Terrace
Stilwell, KS 66085-8922
Telephone: 913.486.3913
Fax: 913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the Plaintiffs

A copy of the above was emailed | faxed on January 4, 2011 to:

Kelly A. Campbell
1000 Walnut Street
Suite 1400
Kansas City, MO 64106
816.474.8100
816.474.3216(fax)
bclark@spencerfane.com
Attorney for the Defendant

/s/ Linus Baker

5

STATE OF KANSAS      )
                     )
COUNTY OF SHAWNEE    )

### BUSINESS RECORDS AFFIDAVIT

Before me, the undersigned authority, personally appeared Brenda L. Block, who, being by me duly sworn, deposed as follows:

I am of sound mind, capable of making this Business Records Affidavit, and personally acquainted with the facts stated herein:

a. I am the duly authorized Records Custodian and have the authority to certify records of the Office of the State Bank Commissioner in response to open records requests;

b. the attached one (1) page of records is maintained by the Office of the State Bank Commissioner in the regular course of business;

c. the attached copy is an exact duplicate of the original record;

d. it was the regular course of business for the Office of the State Bank Commissioner to preserve such document as part of the records of the office; and

e. the record was made at or near the time of the act, condition, or event.

Further affiant sayeth not.

I swear and affirm the foregoing.

*Brenda L. Block*
Brenda L. Block
Records Custodian

Subscribed and sworn before me this 29th day of December, 2010.

Notary Public
State of Kansas
Donna J. Martin
My appt. Expires 5/31/11

*Donna J. Martin*
Notary Public

**PLAINTIFF'S EXHIBIT 1**

**FDIC**
Division of Resolutions and Receiverships
Dallas Regional Office
1601 Bryan Street
Dallas, Texas 75201

Telephone (214) 754-0098

October 22, 2010

Ms. Judi M. Stork, Acting Bank Commissioner
Office of the State Bank Commissioner
State of Kansas
Topeka, Kansas

**Subject:** **Hillcrest Bank**
**Overland Park, Kansas – In Receivership**
**Acceptance of Appointment as Receiver**

Dear Acting Commissioner Stork:

Please be advised that the Federal Deposit Insurance Corporation accepts its appointment as Receiver of the captioned depository institution, in accordance with the Federal Deposit Insurance Act, as amended.

Sincerely,

FEDERAL DEPOSIT INSURANCE CORPORATION

By: _Daniel M. Bell_
Name: Daniel M. Bell
Title: Receiver-in-Charge



233 SOUTH WACKER DRIVE
SUITE 6600
CHICAGO, ILLINOIS 60606
t 312.258.5500
f 312.258.5600
www.schiffhardin.com

Antony S. Burt
312-258-5762
aburt@schiffhardin.com

October 27, 2010

**VIA EMAIL AND FEDERAL EXPRESS**

Katherine L. Knudson, Esq.
Bryan Cave LLP
One Atlantic Center
Fourteenth Floor
1201 Peachtree St., NW
Atlanta, Georgia 30309

   *Re:*  *Copying and Removal of Hillcrest Bank Documents and Files*

Dear Ms. Knudson:

   As you are aware, on October 22, 2010 Hillcrest Bank of Overland Park, Kansas (the "Bank") was closed by the Kansas Office of the State Bank Commissioner, and the Federal Deposit Insurance Corporation was appointed as Receiver ("FDIC-Receiver"). Pursuant to 12 USC §1821(d)(2)(A), the FDIC-Receiver has "stepped into the shoes" of the Bank and is the successor to: "…(i) all rights, titles, powers, and privileges of the insured depository institution …" The FDIC-Receiver therefore has acquired all of the Bank's right, title and interest in the Bank's documents, files and records.

   The FDIC-Receiver has learned that one or more of the Bank's officers or directors, and/or the law firm of Bryan Cave on their behalf, instructed and caused an employee of the Bank to copy the bank documents described more fully below (collectively referred to as the "Bank Records") and provide those copied Bank Records to Bryan Cave.

   The Bank records that Bryan Cave and its clients have caused to be accessed, copied, and removed from the Bank's premises are the property of the Bank and contain sensitive, personally identifiable and nonpublic personal information about its customers, including but not limited to internal loan committee minutes; loan files and various loan reports and spreadsheets; and other loan and finance-related documents and files, such as appraisals, guaranties and financial statements. The Bank was required to protect the security and confidentiality of that information pursuant to statutes, regulations, and internal policies, including but not limited to the Gramm-Leach-Bliley Act, 15 USC §§ 6801 & 6805(b); the Federal Deposit Insurance Act, 12 USC

CHICAGO | WASHINGTON | NEW YORK | LAKE FOREST | ATLANTA | SAN FRANCISCO | BOSTON

PLAINTIFF'S EXHIBIT 2

G1



October 27, 2010
Page 2

§ 1821p-1; the Bank Secrecy Act, 31 USC § 5318(g); and FDIC regulations, 12 CFR Parts 332 and 364.

Neither the Bank nor any of its customers properly consented to the accessing or copying of these records by Bryan Cave or by Bryan Cave's clients for those persons' individual and/or collective use, or to the removal of those copied files from the Bank's premises. Those acts violated the above-referenced statutes, regulations, and policies, which were adopted to protect the nonpublic personal information of the Bank's customers and employees, could lead to substantial damages to the FDIC- Receiver and/or Hillcrest Bank, National Association, a newly chartered bank subsidiary of NBH Holdings Corp., the entity that acquired assets of the Bank. The accessing, copying and removal of the Bank Records also violates the Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(2).

The Bank records that Bryan Cave caused to be accessed, copied, and sent out of the Bank also contain confidential, trade secret information belonging to the Bank, including but not limited to financial statements and reports, internal meeting minutes, and strategic and business plans. This valuable information is not generally known or ascertainable from public sources, and neither Bryan Cave nor its clients had proper authorization to copy and remove it from the Bank, or to use it for their own purposes. The copying and removal of this information therefore constitutes misappropriation of trade secrets as well as a grave breach of your clients' fiduciary duties to the Bank, and this conduct subjects Bryan Cave and its clients to liability, as well as payment of whatever attorneys' fees the FDIC-Receiver may incur in addressing it.

On behalf of the FDIC-Receiver, we demand that Bryan Cave and its clients *immediately* return to the FDIC-Receiver *all* Bank records and *all* copies thereof. It is also critical that Bryan Cave provide sworn statements to the FDIC-Receiver to establish:

- Where the Bank records have been stored from the moment that the records were removed from the Bank;

- The identity of all persons who had access or may have had access to the Bank Records during that period of time;

- Whether the Bank Records have been accessed, copied, altered, destroyed, or contaminated in any way from the time the records were removed from the Bank until the time the Bank records are returned to the possession of the FDIC-Receiver.



October 27, 2010
Page 3

Once the Bank records are returned, they will be analyzed, if necessary, to determine whether the records have been accessed, copied, or altered in any way. The cost of that analysis is not insignificant, and FDIC-Receiver will seek to recover those costs from all persons or entities that were responsible in any way for the wrongful removal of Bank records.

We look forward to the immediate return of the Bank records and sworn declarations in compliance with this demand. Should Bryan Cave and its clients fail to return all copies of the Bank Records by the close of business on Friday, October 29, 2010, the FDIC-Receiver will seek judicial intervention and appropriate relief in the courts. To avoid legal action, please contact me as soon as possible to discuss the logistics of returning the Bank Records to the FDIC-Receiver and obtaining the necessary sworn statements.

The FDIC-Receiver's investigation into the removal of the Bank's documents, files and records has just begun, and a complete inventory of all copied files has not yet been completed. Failure to identify a particular file, fact or issue in this letter should not be construed as a waiver. The FDIC-Receiver reserves all rights and remedies available to it under law and equity.

Very truly yours,

Antony S. Burt

ASB:nt

CH2\9254021 1



**Federal Deposit Insurance Corporation**
7777 Baymeadows Way West, Jacksonville, FL 32256

Legal Division

October 27, 2010

BY OVERNIGHT MAIL—SIGNATURE REQUIRED

Re:   Notice of Claim
      Hillcrest Bank Kansas
      <u>Loss/Damage Claim</u>

| | |
|---|---|
| Nicole Davis<br>705 Shiloh Drive<br>Raymore, MO 64083 | Tim Gervy<br>30405 Crystal Aire Drive<br>Grain Valley, MO 64029 |
| Wanda Holdeman<br>10808 W 109th Street<br>Overland Park, KS 66210 | Joel Richards<br>9122 Allman<br>Lenexa, KS 66219 |
| Dan Schwartzkopf<br>753 NW Silver Ridge<br>Lee's Summit, MO 64081 | Thomas J. Davies<br>27180 W 199th<br>Gardner, KS 66030 |
| Scott I. Asner<br>121 W 48th Street, Apt 1703<br>Kansas City, MO 64112 | Irwin Blitt<br>9 Commodore Drive #313<br>Emeryville, CA 94608 |
| Robert J. Campbell<br>5604 NW 60th<br>Kansas City, MO 64151 | Jack N. Fingersh<br>4400 W 87th Place<br>Prairie Village, KS 66207 |
| Paul S. Fingersh<br>8400 Briar Lane<br>Prairie Village, KS 66207 | George A. Lieberman<br>11504 Juniper<br>Overland Park, KS 66211 |
| Sue Gallatin<br>1209 NW Fairway Circle<br>Blue Springs, MO 64014 | Jeffrey F. Wheeler<br>3309 W. 127th St.<br>Leawood, KS 66209 |
| Gerald M. White<br>1912 W. 61st Terrace<br>Mission Hills, KS 66208 | Brian K. Schneider<br>961 Cullin's Rd.<br>Rockwall, TX 75032 |
| G. Richard Degen<br>10223 Catalina<br>Overland Park, KS 66207 | |

{P:/DOCS/1000/070/00418706;1 }

Notice of Claims Against Officers and Directors
October 27, 2010
Page 2

Dear Ladies and Gentlemen:

On October 22, 2010, the Office of the State Bank Commissioner of Kansas closed Hillcrest Bank Kansas ("HBKS"). The Federal Deposit Insurance Corporation ("FDIC") was named Receiver, thereby succeeding to HBKS's claims, including those against HBKS's officers and directors.

As a result of the FDIC's investigation, which remains on-going, by this letter we hereby place you on notice of the FDIC's claim for losses resulting from certain wrongful acts that occurred during your service as a duly elected or appointed director or officer of HBKS ("Claim"). This Claim includes, but is not limited to, the following:

1. Negligent and/or grossly negligent lending policies and practices that left HBKS susceptible to catastrophic losses as the economy slowed, and as the real estate markets deteriorated both locally and in the out-of-area markets involved in HBKS's loans. These policies and practices include:
    a. Failure to establish policies and procedures that required a diversified loan portfolio that would protect the safety and soundness of HBKS from economic and market downturns.
    b. Implementation of a lending strategy that focused extensively on commercial real estate and high-risk construction and land development loans.
    c. Failure to establish policies and procedures that limited HBKS's concentrations in commercial real estate, including construction and land development loans, and to assess and/or address the concentration risk of such loans in HBKS's loan portfolio;
    d. Failure to properly review and approve loans.

2. Failure to implement, require and oversee adequate loan underwriting and credit risk management practices. These practices include:
    a. Failure to assess and plan for possible risks associated with real estate development/interest reserve loans and HBKS's loan portfolio concentration in such loans;
    b. Negligent and/or grossly negligent loan administration and monitoring;
    c. Failure to establish policies and procedures for loan underwriting that required assessment of the creditworthiness of borrowers/guarantors and of contingent liabilities, and confirmation of alternative sources of repayment in the event the collateral that secured HBKS's loans diminished in value;
    d. Failure to establish policies and procedures for confirmation of collateral value, and/or the control and monitoring of the use of loan proceeds to insure loan proceeds are utilized in accordance with the terms and conditions of HBKS's loans;
    e. Failure to establish and employ sound internal controls; and

{PYDOCS/1000/070/00448706;1 }

Notice of Claims Against Officers and Directors
October 27, 2010
Page 3

    f.    Failure to adequately oversee HBKS's management to insure operation of HBKS in a safe and sound manner, and in compliance with the directions and policies set by HBKS's Board of Directors.

The FDIC's investigation into the actions and omissions of HBKS's directors and officers remains on-going. The FDIC's Claim currently involves the errors, misstatements, misleading statements, actions, omissions, negligence and/or breach of duties of HBKS's directors and officers involving the following loans ("Target Loans"):

| Loan | Number |
|---|---|
| Quintero Golf | 63758 |
| The Foundry At South | 63633 |
| TR Shadow View | 63716 |
| Custom Mill Works | 64113 |
| Florida Land | 63756 |
| Oklahoma City Senior | 64022 |
| Royal Palm Las Vegas | 63298 |
| Landmark Builders | 62938 |
| MVB Holding | 63988 |
| Royal Palm 700 Biscayne | 64313 |
| Columbus Campus | 64268 |
| Sky Investments | 64367 |
| BAP Newleaf | 63966 |
| Morley-Howard | 63598 |
| Mid-Am Horizon | 63393/63801 |
| Kansas Campus | 63926 |
| Erickson Retirement | 64059 |
| Margaux Rockport | 63894 |
| Dean Kruse | 64169 |
| OKK Equipment | 64010 |
| G C Note | 63858 |
| Royal Palm Cypress Point | 63935 |
| Redfish Village | 64161 |
| ROKK Lease or Loan LLC | 64420/64421/63919 |
| Kruse, Inc | 64316 |
| Morley Co. Family | 63366 |
| Kinsley Forest | 63778 |
| Oakridge Golf Club | 63427 |
| Two Seasons Resort | 63095 |
| Shores Properties | 62929 |
| Claire Pointe | 63487 |
| Elm Grove | 63053 |
| Johnnie Adams | 63531/64325/64398 |
| Missouri Partners | 63838 |
| The Links | 63868 |
| UST-CB | 64142 |

{P:/DOCS/1000/070/00148706;1 }

Notice of Claims Against Officers and Directors
October 27, 2010
Page 4

As the FDIC's investigation continues, this list of Target Loans will be supplemented, as required.

As a result of the actions and omissions of HBKS's directors and officers, the FDIC currently estimates the Bank's losses to be $506,916,209.00, which includes losses stemming from the Target Loans. The FDIC hereby makes demand on each of you for repayment of these losses.

The FDIC reserves the right to amend and supplement this demand at a future time as the damages from these loans, as well as other acts or omissions, become further defined.

HBKS elected the Extended Reporting Period for its Management and Professional Liability Policy with OneBeacon Midwest Insurance Company ("OneBeacon"), Policy Number 474-00-05-56-0000 ("Policy"), which may provide you with some coverage for this Claim. This Extended Reporting Period expires at 12:01 a.m. on October 31, 2010. For your ease of reference, the contact information for OneBeacon is as follows:

    OneBeacon Midwest Insurance Company
    Claim Reporting Unit
    Policy No. 474-00-05-56-000
    1 Beacon Lane
    Canton, MA 02021
    Phone: 877-624-2265
    Fax: 877-624-6665
    agtfnol@onebeacon.com

In order to protect your legal rights under the Policy, you may wish to consult with counsel of your selection, and to provide appropriate and timely notice to OneBeacon.

Sincerely,

Glenn A. Harris
Senior Counsel
Professional Liability and Financial Crimes Section

cc:   OneBeacon Midwest Insurance Company
     Claims Reporting Unit
     1 Beacon Lane
     Canton, MA 02021

     George Don Ryburn

     Julie Fry Yanda, Esq.

{P:/DOCS/1000/070/00448706.1}