IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **QUINTERO COMMUNITY ASSOCIATION**, *et al.*, | ) ) ) |
| Plaintiffs, | ) Case No. 4:11-cv-00893-JTM ) ) |
| v. | ) ) |
| **FEDERAL DEPOSIT INSURANCE COMPANY AS RECEIVER FOR HILLCREST BANK**, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

**REPLY SUGGESTIONS IN SUPPORT OF MOVANTS WHEELER, ASNER, BLITT, CAMPBELL, J. FINGERSH, P. FINGERSH, WHITE, DEGEN, GERVY, RICHARDS, DAVIES, LIEBERMAN, FORGEY, DAVIS, HOLDEMAN, SCHWARTZKOPF, GALLATIN, SCHNEIDER, AND HILLCREST BANCSHARES' MOTION TO DISMISS PLAINTIFFS' OMNIBUS PETITION**

LEWIS, RICE & FINGERSH, L.C.

By: /s/ Thomas R. Larson
 Thomas R. Larson, Mo. Bar No. 26114
 trlarson@lrf-kc.com
 Scott A. Wissel, Mo. Bar No. 49085
 sawissel@lrf-kc.com
 1010 Walnut, Suite 500
 Kansas City, Missouri 64106
 Telephone: 816-421-2500
 Facsimile: 816-472-2500

ATTORNEYS FOR DEFENDANTS WHEELER, ASNER, BLITT, CAMPBELL, J. FINGERSH, P. FINGERSH, WHITE, DEGEN, GERVY, RICHARDS, DAVIES, LIEBERMAN, FORGEY, DAVIS, HOLDEMAN, SCHWARTZKOPF, GALLATIN, SCHNEIDER, AND HILLCREST BANCSHARES

## TABLE OF CONTENTS

Table of Content ...........................................................................................................................i

Table of Authorities ..................................................................................................................... ii

INTRODUCTION…………………………………………………………………………......…1

I.   THE PETITION DID NOT COMPLY WITH THE COURT'S MAY 18 ORDER ...............5

II.  PLAINTIFFS FAILED TO ADDRESS TWO FATAL DEFICIENCIES IN THEIR
     CLAIMS......................................................................................................................................6

     A.   The Letters of Credit..................................................................................................6

     B.   Personal Liability.......................................................................................................7

III.  EACH COUNT FAILS TO STATE A CLAIM .....................................................................7

     A.   Count 1.......................................................................................................................7

     B.   Count 2.......................................................................................................................9

     C.   Count 3.....................................................................................................................10

     D.   Count 4.....................................................................................................................10

     E.   Count 5.....................................................................................................................12

     F.   Count 6.....................................................................................................................12

     G.   Count 7.....................................................................................................................13

     H.   Count 8.....................................................................................................................14

     I.   Count 9.....................................................................................................................14

     J.   Count 16...................................................................................................................15

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) ................................................................1

In re Ball, 2009 WL 1457025 (D. Ariz. 2009) ........................................................................12

Jabczenski v. Southern Pac. Mem'l Hosps., Inc., 579 P.2d 53 (Ariz. Ct. App. 1978) .................14

Marketxt Holdings Corp. v. Engel & Reiman, P.C., 693 F. Supp. 2d 387 (S.D.N.Y. 2010) ........13

Mayo v. GMAC Mortgage, LLC, No. 08-00568-CV-W-DGK, Order Granting Defendant
    Deustche Bank's Motion to Dismiss (W.D. Mo. Mar. 1, 2010) .........................................3

Mosley v. Trans Rent-A-Car, Inc., 650 P.2d 1256 (Ariz. Ct. App. 1982) ...................................11

Public Water Supply Dist. No. 3 of Laclede County, Mo. v. City of Lebanon, Mo.,
    605 F.3d 511 (8th Cir. 2010) ........................................................................................ 2-3

State ex rel. Brant v. Bank of America, 31 P.3d 952, 959 (Kan. 2001) .........................................8

Van Weelden v. Hillcrest Bank, No. 2:10-CV-01833-PHX-JAT,
    2011 WL 772522 (D. Ariz. Feb. 28, 2011) ......................................................6-7, 9-10, 12

Wells Fargo Bank v. Az. Laborers, Teamsters, and Cement Masons Local No. 395 Pension Fund,
    38 P.3d 12 (Ariz. banc 2002) ...............................................................................................13

## Statutes

18 U.S.C. § 1030..............................................................................................................................8

Ariz. Rev. Stat. § 12-550...............................................................................................................13

Ariz. Rev. Stat. § 44-1522.............................................................................................................14

Ariz. Rev. Stat. § 47-5115.............................................................................................................10

K.S.A. 60-513(a)(4) ......................................................................................................................13

# INTRODUCTION

Plaintiffs' Opposition to Movants' Motion to Dismiss (ECF doc. 73, the "Opposition") does not offer nearly enough to prevent the dismissal of Plaintiff's Omnibus Petition (the "Petition"). Indeed, examination of the Opposition (both what is says and, importantly, what it does not) further demonstrates why Plaintiffs' Petition should be dismissed with prejudice.

First, as set forth by Movants in their Motion to Dismiss, the Petition simply does not comply with this Court's Order, dated May 18, 2012 (the "May 18 Order"). In their Opposition, Plaintiffs fail to even address this dispositive issue, and, therefore have failed to articulate how the Petition complies with this Court's order that they "clearly and concisely" plead plausible claims against the Defendants. (*See* Part I, *infra*).

Second, Plaintiffs again are unable to provide the Court with any citation to any specific factual allegations that could conceivably "raise the right to relief above the speculative level."[1] As a result, Plaintiffs have failed to articulate why this Court should consider putting a case on its docket which, regardless of how it is pleaded, requires the Court to accept as plausible Plaintiffs' attempt to dramatically expand tort liability in the United States. Boiled down, Plaintiffs' novel theory of liability is as follows:

> Any time an investor ("Investor") invests money with a business which borrowed money from a bank ("Borrower") and the Investor loses money, Investor can sue the officers and directors of the bank which loaned money to Borrower so long as Investor is willing to do the following:
>
> a)  Pay a filing fee;

---

[1] As if envisioning this exact case, the Supreme Court explained in *Twombly* that speculation "consistent with" wrongful conduct is not sufficient to state a claim, and "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007) (internal citations omitted).

b) Allege that Investor invested money and lost the investment, and allege facts showing that Borrower (not the lender) might possibly have acted unlawfully;

c) Allege that the officers and directors "must have" known that Borrower was acting unlawfully, or "must have" been colluding with that Borrower; and

d) List the elements of various causes of action along with a series of legal and factual conclusions that the elements of those alleged causes of action have been satisfied.

This cannot be the law (lest we kill commerce and lending in America), and is not the law. The holdings of *Iqbal* and *Twombly* are specifically directed toward preventing implausible causes of action like those in the case at bar from taking up the time and resources of the court and the parties and worse, subjecting officers and directors of the bank to protracted litigation and voluminous discovery if they choose not to enter into *in terrorem* settlements. The underlying premise of Plaintiffs' Opposition – that merely pleading unsupported legal conclusions entitles them to go fishing for factual support through discovery – flies in the face of *Twombly* and *Iqbal* and should be rejected by this Court.

The state of affairs in this litigation is susceptible to no other reasonable conclusion but that Plaintiffs are asking this Court to expand the liability of bank officers and directors in the manner described above. But instead of cogently arguing to this Court that the unique facts of this case demand that liability of officers and directors be expanded, Plaintiffs do not even acknowledge that they are requesting such an expansion. Instead, Plaintiffs pay lip service to no fewer than twenty-four separate causes of action – some of which are currently recognized and some of which (as in the case of novel fiduciary duty theories) Plaintiffs hope this Court will recognize for the first time. Plaintiffs then ask this Court to sift through 72 pages of single-spaced allegations and try to locate facts that may support these disparate claims. This is not the Court's duty: "Judges are not like pigs, hunting for truffles buried in briefs." *Public Water*

2

*Supply Dist. No. 3 of Laclede County, Mo. v. City of Lebanon, Mo.*, 605 F.3d 511, 524 (8th Cir. 2010) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Even if the Court were to engage in such a search, it would find nothing of substance. The Petition is little more than a series of unfounded legal conclusions which seek to hold 19 different defendants liable for the allegedly bad acts of a single bank customer. As this Court has previously noted, "[a]sserting a list of legal conclusions that have been fused together with a disjunctive conjunction and brought against a collection of defendants . . . is not enough to state a claim for relief that is plausible on its face under *Ashcroft*." *Mayo v. GMAC Mortgage, LLC*, No. 08-00568-CV-W-DGK, Order Granting Defendant Deustche Bank's Motion to Dismiss, at 5 (W.D. Mo. Mar. 1, 2010). Plaintiffs here have done precisely that which the Supreme Court and this Court have proscribed, and have offered no argument or precedent to suggest that this Court should depart from its previous holding.

Despite Movants' consternation at even being named in this lawsuit, they concede that this Court followed proper procedure when it permitted Plaintiffs to amend their first petition, and thus give them one final chance to assert a plausible cause(s) of action against Movants. But, in truth and in hindsight, it was futile then and would be futile now to permit Plaintiffs to amend their Petition again. Plaintiffs can amend their Petition 25 times and they still will not be able to allege a plausible cause of action because the facts they have alleged and the facts they can allege simply do not form the basis of any cause of action against even Hillcrest Bank, let alone, its officers, directors, and shareholders.

To put a finer point on the above arguments, the <u>facts</u> actually alleged by Plaintiffs are as follows:

1. Plaintiffs invested with Borrower, McClung.

3

2. Hillcrest (of which Movants were officers and directors) loaned money to Borrower, McClung;

3. Plaintiffs lost their money (or a lot of it);

4. Hillcrest lost its money (or a lot of it);

5. Hillcrest had issued irrevocable letters of credit, allowing for Plaintiff Quintero Community Association ("QCA") to demand money from Hillcrest if construction of certain improvements were not completed on time;

6. McClung, acting on behalf of QCA, asked Hillcrest to cancel certain letters of credit of which QCA was a beneficiary;

7. Borrower McClung made certain representations to certain Plaintiffs which turned out to be untrue.

<u>Everything</u> else asserted in Plaintiffs' Petition is either irrelevant, speculation, or conclusory. By surrounding these assertions with self-serving speculation, unsupported argument, and, at times, outright imagination, Plaintiffs attempt to portray the innocuous facts as a far-reaching, nefarious conspiracy by which each of the 19 Movants knowingly and intentionally caused Plaintiffs to lose their investments. If the Court were to take the bait and approve this tactic, it would be making new law by finding that each of 19 directors, officers, and shareholders of a bank could potentially be held liable to a bank customer's creditors when the customer defaults, without any plausible specific factual allegations that any of these defendants was actually engaged in wrongdoing directed towards any plaintiff.

Equally important, as Movants pointed out in their Suggestions in Support (ECF doc. 67, "Suggestions"), Plaintiffs have not alleged or shown (and still have not alleged or shown) any of the following facts, each of which is essential to one or more of Plaintiffs' causes of action:

    a)    Facts which demonstrate that any of the officer or director Movants owed a fiduciary duty to Plaintiffs. (*See* Suggestions, pp. 11-12);

    b)    Facts which would reasonably lead to a conclusion that any Movant owed any duty to any of the Plaintiffs. (*See* Suggestions, pp. 11-12);

4

c) Facts showing that the irrevocable letters of credit were in full force and effect at the time they were allegedly cancelled. (*See* Suggestions, pp. 8-9);

d) Facts which would plausibly lead to the conclusion that Hillcrest committed a tort against any Plaintiff. (*See generally* Suggestions);

e) Facts which would support any plausible conclusion that any specific Movant, officer, or director directly participated in a tort of commission as opposed to a tort of omission against any specific Plaintiff. (*See* Suggestions, pp. 9-11).

</blockquote>

## I. THE PETITION DID NOT COMPLY WITH THE COURT'S MAY 18 ORDER

Movants identified several ways in which Plaintiffs failed to comply with the Court's directive to file an amended petition stating their causes of action "in a *clear* and *concise* manner, . . . noting which allegations it brings against which Defendant and which facts support those allegations." (*See* ECF doc. 45). Plaintiffs ignore these issues entirely, and do not offer any explanation as to how, for example, increasing the length of the Petition by 25 pages over its predecessor made it more concise. Movants reiterate that the Petition is confusing, vague, disorganized, and argumentative, and should be dismissed for Plaintiffs' willful disregard of the Court's Order. (*See* Suggestions, pp. 2-4).

In a valid lawsuit (even a complex one), the complaint will plead facts and guide the reader through the exercise of determining which facts support which legal conclusions. In this case, Plaintiffs have failed to explain which facts support which claims. By alleging multiple theories of liability within individual counts and cross-incorporating a mass of conclusory allegations in "support" of those theories, Plaintiffs appear to have purposely made their purported theories of liability moving targets. Plaintiffs do not and cannot cite to specific paragraphs of factual allegations in response to the pleading deficiencies Movants identified.[2]

---

[2] To the extent Plaintiffs do reference specific paragraphs in their Opposition; the cited paragraphs simply repeat the bare legal conclusions.

5

Instead, Plaintiffs attempt to cover for their deficiencies by repeating the same unsupported arguments (whether relevant to the individual count or not) and offering the Court their false assurances that the necessary facts were pleaded. Again, Plaintiffs leave it to Movants and the Court to hunt for these missing facts. Movants have tried, and are unable to find any such factual support. Were it the responsibility of the Court to locate the facts Plaintiffs insist were pleaded, the Court would encounter the same difficulties.

Plaintiffs have failed to obey the Court's order to provide a more definite statement. Movants remain unable to prepare a reasonable response to Plaintiffs' allegations. Because the May 18 Order explained to Plaintiffs exactly what was required of them and indicated that no further amendments would be permitted, the Petition should be dismissed with prejudice.

## II. PLAINTIFFS FAILED TO ADDRESS TWO FATAL DEFICIENCIES IN THEIR CLAIMS
### A. *The Letters of Credit*

In their Suggestions, Movants explained (a) that Plaintiffs have not pleaded that the letters of credit were in force and effect when they were allegedly "cancelled," (b) that it appears from Plaintiffs' own allegations that the letters of credit may have expired by their terms before any "cancellation" would have taken place, and (c) that the Federal District Court in *Van Weelden v. Hillcrest Bank* dismissed a claim based on alleged cancellation of one of the same letters of credit on this very basis. (*See* Suggestions, pp. 8-9). Plaintiffs did not address any of these dispositive facts and issues in their Opposition.

Plaintiffs' entire theory of what occurred with regard to the letters of credit – the apparent lynchpin of Plaintiffs' claims – is fatally-muddled and vague. Plaintiffs never actually plead that "Hillcrest cancelled the letters of credit on [date]" at any point in the Petition. It is now apparent from Plaintiffs' Opposition that the action Plaintiffs *construe* as the "cancellation" of the letters of credit did not occur until Defendant Forgey allegedly "instructed PDG to terminate the

6

Quintero Property projects" on October 12, 2007. (*See* Opposition, p.8; Petition, ¶ 221). In order for Plaintiffs to base their claims on supposed "cancellation" of the letters of credit, Plaintiffs were required to allege that the letters of credit were in force and effect on October 12, 2007. Without this necessary allegation, the pleaded facts suggest that the letters of credit simply expired before October 12, 2007, such that Mr. Forgey's alleged action did not amount to a "cancellation."[3] There are no allegations supporting any inference to the contrary. All of Plaintiffs' claims dependent upon cancellation of the letters of credit should be dismissed on this basis.

### B. Personal Liability

Each and every count fails for the additional independent reason that Plaintiffs have not pleaded the requisite facts to show that any Movant "directly participated" in any tort committed by Hillcrest. In their Suggestions, Movants established that Plaintiffs, instead of alleging facts of direct participation, rely upon (a) bald speculation that Movants "had to vote" in order for certain actions to occur, and (b) the false assertion that Movants are personally liable "by virtue of" their authority as board members. (*See* Suggestions, p.11). Plaintiffs only response on this dispositive issue is to repeat their <u>same</u> allegations. (*See* Opposition, p. 10). Because Plaintiffs are unable to cite to any non-speculative factual allegation showing that any Movant participated in any tort, every claim against Movants fails and Movants should be dismissed with prejudice.

### III. EACH COUNT FAILS TO STATE A CLAIM

#### A. Count 1 – Claims related to the fact that copies of some unspecified bank records were provided to attorneys and then returned, at the insistence of the FDIC.

---

[3] As an illustrative example, an examination of the record in *Van Weelden* discloses that Exhibit 2 to Hillcrest's Suggestions in Opposition to a Temporary Restraining Order stated that one of the letters of credit had been extended to September 1, 2007, but that the parties—including QCA—simply let the letter of credit expire after that date. *See* ECF Doc. 1, Attachment 2, at p. 144, *Van Weelden v. Hillcrest Bank*, No. 2:10-cv-01833-JAT (D. Ariz., Aug. 26, 2010).

Of the 11 claims originally attempted in Count 1 of the Petition, Plaintiffs' Opposition chooses to address only two: a violation of 18 U.S.C. § 1030 and breach of fiduciary duty.[4]

Plaintiffs fail to acknowledge that §1030(g) <u>explicitly limits</u> the civil right of action created by 18 U.S.C. § 1030 to situations in which a violation caused: (1) financial loss of at least $5,000, (2) impairment of medical diagnosis of an individual, (3) physical injury, (4) a threat to public health or safety, or (5) damage to certain U.S. Government computers. None of the conditions precedent to a private action under 18 U.S.C. § 1030 have been pleaded; Plaintiffs therefore have not stated a claim. Plaintiffs have not pleaded financial loss arising from the fact that, for a period of time, attorneys may have had copies of documents related to them.

Plaintiffs' explanation of their breach of fiduciary duty claim consists of three unrelated concepts, none of which establish any fiduciary duty owed <u>from</u> Movants <u>to</u> QCA. First, Plaintiffs assert that QCA *could* have entered into a fiduciary relationship with Hillcrest by contract. (Opposition, p. 2). Movants do not deny that such an agreement could exist but deny that it did. More important, the Petition fails to allege the existence of any such agreement.

Plaintiffs, unable to point to an explicit fiduciary duty, switch gears and allege an *implicit* fiduciary duty based on a "reasonable expectation of privacy" QCA allegedly had in its bank records. (Opposition, pp. 2-3). Under Kansas law,[5] however, a bank's customers have "no reasonable expectation of privacy in their bank records." *See State ex rel. Brant v. Bank of America*, 31 P.3d 952, 959 (Kan. 2001). Plaintiffs have not explained how a fiduciary duty owing from Movants to QCA would have been established even with a privacy expectation in

---

[4] The other nine claims fail for reasons previously stated in Movants' Suggestions. (*See* Suggestions at pp. 13-14).

[5] The claims in Count 1, other than the federal law claims, all involve the internal operations of a Kansas bank with regard to accounts and records maintained in Kansas and conduct occurring wholly within the state of Kansas. Therefore, Kansas law should apply to the claims included in Count 1.

8

QCA's records, let alone without one.  Finally, Plaintiffs fall back on the fact that the FDIC's attorneys in a separate action argued that copying bank records was a violation of Movants' fiduciary duties <u>to Hillcrest</u>.  (Opposition, p. 3).  There are simply no facts alleged in the Petition supporting a fiduciary duty Movants owed to any Plaintiff with regard to bank records.  Count 1, then, should be dismissed with prejudice in its entirety.

### B.  *Count 2 – Alleged Interference with Plaintiffs' Loan Agreements with McClung*

Plaintiffs' tortious interference claim in Count 2 is predicated entirely on the notion that Hillcrest wrongfully cancelled the letters of credit.  As explained above, this allegation fails and cannot form the basis of any claim against Movants.

Further, Plaintiffs fail to allege the necessary elements of a tortious interference claim.  In response to Movants' argument that Count 2 must be dismissed due to Plaintiffs' failure to allege any connection between the letters of credit and the fulfillment of McClung's loan obligations to Plaintiffs, Plaintiffs dismissively (and inaccurately) characterize this dispositive causation issue as a "fact issue."  Whether the establishment of a particular element of a claim could be a disputed question of law or fact has no relevance to a plaintiff's initial obligation to plead the requisite facts.  Plaintiffs still have not explained how cancellation of the letters of credit -- if such cancellation occurred -- led to a breach of unrelated loan agreements.  Further, Plaintiffs <u>did not plead</u> (even in a conclusory fashion) the necessary element that Movants knew or intended that cancellation of the letters of credit would cause McClung to breach each and every contract he had with Plaintiffs.  Finally, the element of damages is pleaded as a bare legal conclusion insufficient to support the claim.

The *Van Weelden* court dismissed a nearly identical tortious interference claim for the same reasons.  *See Van Weelden v. Hillcrest Bank*, No. 2:10-CV-01833-PHX-JAT, 2011 WL 772522 (D. Ariz. Feb. 28, 2011).  Plaintiffs attempt to distinguish *Van Weelden* as a "separate

9

case" involving a "different pleading," but they ignore the fact that the court's rationale applies equally to this Petition. For example, on the issue of causation:

> there is no indication that this lack of infrastructure is the result of the breach of the purchase agreement. In order to establish this critical connection, Plaintiffs must plead facts that that would show the Court that completed infrastructure . . . was part of the purchase agreement entered into between Plaintiffs and Quintero.

*Van Weelden*, 2011 WL 772522 at *4. Plaintiffs offer no explanation of how the Petition pleads this necessary connection. Because the same deficiencies are present in the Petition as were noted in *Van Weelden*, the Court should follow suit in dismissing Count 2.

### C. Count 3 – Alleged Breach of the Letters of Credit

As with Count 2, Count 3 is predicated on the fatally-flawed allegation that the letters of credit were wrongfully-cancelled and, as explained above, fails on this independent basis.

Beyond that, the breach of contact (*i.e.,* the letter of credit) alleged in Count 3 is barred by the applicable one-year statute of limitation. *See* Ariz. Rev. Stat. § 47-5115. Any alleged breach of the letters of credit occurred in October 2007; Plaintiffs filed this action on January 4, 2011. Plaintiffs cannot circumvent this fact by fancifully arguing that the "Arizona statutory scheme" creates fiduciary duties which are not in the text of the statutes and which have not been recognized by the Courts. The thrust of this Count is that the contractual promise of "guaranteed funding" in the letters of credit was breached. (*See* Petition, ¶ 192 and the title of Count 3). This claim is barred. Count 3 should be dismissed with prejudice.

### D. Count 4 – Aiding and Abetting McClung's Alleged Wrongdoing

Count 4 remains impossibly ambiguous. Rather than a simple series of factual allegations that McClung committed a tort, Movants assisted the tort, and Movants knew they were assisting the tort, Count 4 consists of a mass of cross-incorporated legal conclusions and

10

wide-ranging unrelated occurrences without any logical connection. The Petition does nothing to put Movants or the Court on notice of what conduct is alleged to have assisted which tort.

Plaintiffs' Opposition attempts to explain away the deficiencies by asserting that there are "numerous facts stated that indicate the conduct of the board members made the tortious conduct of McClung easier" without any hint as to what these facts might be. (Opposition, p.17). The only conduct that Plaintiffs specifically reference in their Opposition is the alleged cancellation of the letters of credit. (*See* Opposition, pp. 15-16). This is problematic not only for the reasons identified in Part II.A, *supra*, but also because there is no logical or legal connection between the letters of credit and any of the torts McClung allegedly committed. For example, Plaintiffs cannot possibly claim that cancelling the letters of credit in October of 2007 assisted McClung in making allegedly fraudulent statements occurring before that time.[6]

Additionally, though Plaintiffs do not discuss it in their Opposition, Count 4 is dependent upon the unsupported conclusion that each Movant directly participated in fraudulent manipulation of the Quintero accounting. As Movants have discussed, there are no factual allegations supporting the bald accusations of such fraudulent conduct. (*See* Suggestions, p 7). Plaintiffs make no attempt in their Opposition to identify any such factual support. Further, to base a cause of action against all Movants on this alleged fraud, Plaintiffs were required, at a

---

[6] Furthermore, none of the supposed underlying torts were sufficiently pleaded. (*See* Suggestions, pp. 5-7, 18-19). Plaintiffs' response to this deficiency is to (a) again insist without citation to specific allegations that the necessary facts were pleaded, and (b) argue that previous judgments certain Plaintiffs obtained against McClung (which he did not oppose) render this issue moot. (*See* Opposition, pp. 13-14). By arguing that these previous judgments conclusively establish underlying torts, Plaintiffs are, in effect, attempting to employ collateral estoppel against Movants, who were not parties to the previous actions, which were not decided on the merits. Movants have a right to litigate the issue of whether McClung committed underlying torts. *See Mosley v. Trans Rent-A-Car, Inc.*, 650 P.2d 1256, 1258 (Ariz. Ct. App. 1982). Plaintiffs, then, have a responsibility to adequately plead the underlying torts, which are necessary elements of Plaintiffs' claims in Count 4. Without doing so, Plaintiffs necessarily fail to state a claim for aiding and abetting.

11

minimum, to "inform each defendant separately of the allegations concerning his alleged participation in the fraud." *In re Ball*, 2009 WL 1457025 at *4 (D. Ariz. 2009). Plaintiffs have not done so, and Count 4 should be dismissed with prejudice.

### E. Count 5 – Civil Conspiracy

As Movants established, Count 5, for all of its unsupported argument, brazen speculation, and colorful rhetoric, does not identify any tort that McClung and Movants supposedly conspired to commit. In response, Plaintiffs have included a purported quote from the Petition listing torts that were allegedly agreed to. (*See* Opposition, p.18). This quote does not appear in the Petition. As stated in *Van Weelden*, "without stating the underlying tort, Plaintiffs' conclusory allegation that [Hillcrest]'s officers entered into an agreement with McClung is insufficient to state a claim for civil conspiracy." 2011 WL 772522 at *8.

Further, Plaintiffs do not address Movants' argument that this claim is, by the very language of the Petition, bald speculation. There is simply no factual allegation supporting the existence of an agreement to commit a tort other than Plaintiffs' own unreasonable conclusion that there "had to be a plan." (Petition, ¶ 242). Count 5 does not "rise above the speculative level," and must be dismissed with prejudice.

### F. Count 6 – Securities Fraud and Breach of Individual Fiduciary Duties

Count 6 seeks to plead two unrelated claims: securities fraud and breach of fiduciary duties. Plaintiffs' Opposition contains no reference to the purported securities fraud claim, which should be dismissed for the reasons stated in Movants' Suggestions, the most significant of which is that the Petition never alleges that Movants participated in any action related to the sale of securities.

Plaintiffs' breach of fiduciary duty claim is the same as Count 3, only with the added conclusion that Movants owed *individual* fiduciary duties to QCA. This claim is deficient as a

12

matter of law for the reasons stated in Movants' Suggestions in Support. Plaintiffs attempt to salvage this claim by asserting that a duty is created when a "special relationship" exists and by citing to the *Wells Fargo* case.[7] *Wells Fargo*, however, does not and could not state that any such duty is owed from individual directors and officers. Moreover, Plaintiffs do not allege a "special relationship." As with Count 3, the fiduciary duty claim in Count 6 refers only to the letters of credit. It should, then, be dismissed for the same reasons as Count 3.

### G. Count 7 - Conversion

Plaintiffs concede that the two-year statute of limitations has run on the conversion claim asserted in Count 7. But Plaintiffs now assert that their claim is for aiding and abetting conversion, and imply (again without any legal support) that this claim has a different statute of limitations. Generally, the statute of limitations for an aiding and abetting claim "is determined by the underlying tort." *See, e.g.*, *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 393 (S.D.N.Y. 2010). Neither Kansas nor Arizona has a specific statute of limitations for aiding and abetting that differs from this general rule. Further, even if aiding and abetting were interpreted as a separate tort, the statute of limitations would still be two years in both Kansas and Arizona. *See* K.S.A. 60-513(a)(4), Ariz. Rev. Stat. § 12-550. In any event, the applicable limitations period expired before any of these claims were brought.

Further, the Petition tacitly admits that this claim is pure speculation based on Plaintiffs' guess that "[t]he amounts may have been wired to Hillcrest." (Petition, ¶ 100 (emphasis added)). Count 7 should be dismissed with prejudice.

---

[7] *Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Fund*, 38 P.3d 12, 22 (Ariz. banc 2002).

13

### H. Count 8 – Individual Liability for Hillcrest's Alleged Negligence

In their discussion of Count 8, Plaintiffs make the unsurprising assertion that aiding and abetting negligence is a recognized cause of action in Arizona. (Opposition, p. 21). However, Plaintiffs attempted to plead a direct participation theory for this claim, not aiding and abetting.[8] In their Motion, Movants explained that the "direct participation" theory as developed by Arizona courts does not allow plaintiffs to impose personal liability on directors and officers of a corporation by alleging that the negligence of the directors and officers caused the corporation to be negligent. (*See* Suggestions, p. 23). Plaintiffs do not dispute this point. This is exactly what Count 8 attempts to do, and for that reason it should be dismissed.

Further, Plaintiffs are still unable to point to factual allegations establishing negligence on the part of Hillcrest and/or Movants. Plaintiffs' only attempt to do so is a citation to an FDIC letter which generally opines that Hillcrest had "negligent lending practices." The statement of the FDIC's opinion does not in any way establish facts showing that Hillcrest committed the tort of negligence and thereby injured Plaintiffs. For the reasons explained in Movants' Suggestions in Support, such a tort was not alleged and Count 8 should be dismissed.

### I. Count 9 – Unidentified Consumer Protection Violations

Plaintiffs still have not identified the consumer protection statute under which they seek to hold Movants liable.[9] Assuming Plaintiffs are claiming violation of Ariz. Rev. Stat. § 44-1522 – the statute governing fraud in connection with the sale of merchandise – Plaintiffs have failed

---

[8] The very cases Plaintiffs cite repeatedly state that the only way to hold an individual director or officer personally liable for the torts of a corporation is the direct participation theory. *See, e.g.*, *Jabczenski v. Southern Pac. Mem'l Hosps., Inc.*, 579 P.2d 53, 58 (Ariz. Ct. App. 1978). A claim against a director for aiding and abetting his own corporation is simply not available.

[9] Plaintiffs argue that they are not required to cite a particular statute in order to state a claim. The issue with Count 9 is that Plaintiffs have merely named a type of claim rather than a particular cause of action. There is no way to know how Plaintiffs are intending to proceed under their "consumer protection" theory without citation to a particular "consumer protection" action.

14

Case 4:11-cv-00893-DGK   Document 78   Filed 09/21/12   Page 17 of 19

to include any allegation that Hillcrest or any Movant was involved in the sale of merchandise such that the statute could apply.  Additionally, the only allegedly-deceptive practice identified relates to the letters of credit.  For reasons identified above, the argument that any aspect of the handling of letters of credit was deceptive fails.  Further, there is no allegation that the letters of credit had anything to do with the sale of merchandise.  Count 9 should be dismissed.

### J. Count 16 – Hillcrest Bancshares' Supposed Participation

Plaintiffs assert that Count 16 is not a piercing-the-corporate-veil count, but instead pleads direct participation by Hillcrest Bancshares.  Setting aside that this means Plaintiffs deliberately wasted Movants' and the Court's time and attention by including allegations reciting the elements of a veil-piercing claim they apparently no longer intend to pursue, Plaintiffs have failed to plead direct participation by Hillcrest Bancshares.  The excerpt Plaintiffs cut and pasted lists – again, in a conclusory fashion – wrongs allegedly committed by Hillcrest.  (*See* Opposition, p. 24).  It does not include any reference to any action taken by Hillcrest Bancshares.  Further, all of the arguments Movants have made with regard to the counts against the directors and officers apply equally to Hillcrest Bancshares, and Plaintiffs have not stated any claim against Hillcrest Bancshares for the same reasons.  Count 16 should be dismissed with prejudice.

## CONCLUSION

WHEREFORE, these Defendants request that the Court dismiss the Petition with prejudice and award them their costs incurred in responding thereto, including attorneys' fees.

15

Case 4:11-cv-00893-DGK   Document 78   Filed 09/21/12   Page 18 of 19

Respectfully Submitted,

LEWIS, RICE & FINGERSH, L.C.

By: /s/ Thomas R. Larson
    Thomas R. Larson, Mo. Bar No. 26114
    trlarson@lrf-kc.com
    Scott A. Wissel, Mo. Bar No. 49085
    sawissel@lrf-kc.com
    1010 Walnut, Suite 500
    Kansas City, Missouri 64106
    Telephone: 816-421-2500
    Facsimile: 816-472-2500

ATTORNEYS FOR DEFENDANTS WHEELER, ASNER, BLITT, CAMPBELL, J. FINGERSH, P. FINGERSH, WHITE, DEGEN, GERVY, RICHARDS, DAVIES, LIEBERMAN, FORGEY, DAVIS, HOLDEMAN, SCHWARTZKOPF, GALLATIN, SCHNEIDER, AND HILLCREST BANCSHARES

**CERTIFICATE OF SERVICE**

    I electronically filed the foregoing on this 21st day of September 2012, with the Clerk of the Court by using the CM/ECF system, which will automatically send a notice of electronic filing to all parties of record.

    /s/ Thomas R. Larson
    *Attorney for Movants*

16