# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| QUINTERO COMMUNITY ASSOCIATION, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11-00893-CV-W-DGK |
| | ) | |
| HILLCREST BANK, et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## ORDER GRANTING MOTION TO DISMISS IN PART

This case arises from Plaintiffs' losses sustained from their investment in and purchase of property at a failed golf course development owned and operated by Gary McClung and his related companies and entities (the "McClung Entities"). Plaintiffs bring suit against various parties, including Hillcrest Bank, Hillcrest Bancshares, and the officers and directors of both, for negligent management and supervision, conversion, fraud, aiding and abetting, civil conspiracy, intentional interference with business relationships, and breach of fiduciary duty (Doc. 56).

Pending before the Court is a "Motion to Dismiss" (Doc. 58) on behalf of the Federal Deposit Insurance Corporation, in its capacity as Receiver for Hillcrest Bank ("FDIC-R") and a "Motion to Dismiss" (Doc. 63) on behalf of Separate Defendants Wheeler, Asner, Blitt, Campbell, J. Fingerish, P. Fingersh, White, Degen, Gervy, Richards, Davies, Lieberman, Forgey, Davis, Holderman, Schwartzkopf, Gallatin, Schneider (collectively "the Board of Directors") and Hillcrest Bancshares.[1] Defendants argue that this Court lacks subject-matter jurisdiction to hear the case, or in the alternative, that the Court should dismiss Plaintiffs' complaint for failure to

---

[1] Although Defendant FDIC-R and the Board of Directors submitted separate motions to dismiss, the parties' arguments are essentially the same, and, after the Board of Directors submitted their motion to dismiss, Defendant FDIC-R filed a motion to join (Doc. 66).

state a claim upon which relief can be granted.  For the reasons discussed below, Defendants'

motions to dismiss are DENIED in part and GRANTED in part.[2]

**Background**

Plaintiffs are purchasers of, and investors in, property belonging to an Arizona golf

course community development, Quintero Golf and Country Club, LLC ("QGCC"), initiated by

Gary McClung and his related companies (the "McClung Entities").  Some, but not all,

individual Plaintiffs are also members of Quintero Community Association ("QCA"), an Arizona

non-profit which itself owns property in the QGCC and is a plaintiff in the case.  Hillcrest Bank

and Hillcrest Bancshares, the corporation which held all the stock in Hillcrest Bank, were also

investors in QGCC, having lent over $50,000,000 in loans to the McClung Entities.

Plaintiffs allege that Hillcrest Bank and its Board of Directors financed the McClung

Entities' QGCC development knowing of the McClung Entities' dire financial condition and

inability to service the debt.  Furthermore, Plaintiffs allege that Hillcrest Bank and its directors

"concocted a scheme with McClung" to conceal QGCC's financial condition from Plaintiffs

rather than declaring a default on the loan ("the Quintero loan").  As a result of what Plaintiffs

allege to be Defendants' concealment and misrepresentation about the financial condition of

QCGG,[3] Plaintiffs maintain they were improperly induced to invest in an illegitimate business

venture which was never completed.  Therefore, Plaintiffs bring claims against Hillcrest

Bancshares, Hillcrest Bank, and the board of directors of both[4] ("the Board of Directors") under

---

[2] In ruling on these motions, the Court also considered Docs. 61, 66, 67, 73, 78, 86, 87, 88, 89, and 90.
[3] After an FDIC inspection of Hillcrest Bank, the FDIC found that Hillcrest Bank had violated several banking rules including "imprudent lending and collection practices" (Doc. 37, at 8).  It also found that Hillcrest's management "failed to provide adequate supervision over and direction to the management of the bank."  *Id.*
[4] Plaintiffs allege that each of the Defendant Board of Directors are either directors of Hillcrest Bank or Hillcrest Bancshares.

2

a variety of theories of liability including, but not limited to, breach of contract, fraud, fraud by silence, breach of fiduciary duty, and civil conspiracy.

On May 3, 2010, Plaintiffs filed their initial petition against Hillcrest Bank in the Circuit Court of Jackson County, Missouri under various lender liability theories. In October of that year, the Office of the State Banking Commissioner of Kansas closed Hillcrest Bank and appointed the FDIC-R to serve as its receiver. On February 28, 2011, counsel representing Hillcrest Bank moved to substitute the FDIC-R for Hillcrest Bank in the state court action. On March 1, 2011, the state court granted Hillcrest Bank's motion and substituted the FDIC-R for Hillcrest Bank.

On January 4, 2011, Plaintiff filed a separate petition against the McClung Entities and former Board of Directors of Hillcrest Bank and its parent company, Hillcrest Bancshares also in the Circuit Court of Jackson County, Missouri. The court consolidated these cases into one action on April 21, 2011. Defendants removed the case to this Court on September 6, 2011.

On June 11, 2012, Plaintiffs filed an amended complaint entitled the "Omnibus Petition," with leave of the Court, which consists of 72 single-spaced pages and 340 numbered paragraphs. Defendants now maintain that the Omnibus Petition is unnecessarily long, lacks organization and structure, sets forth only vague allegations, and fails to state any cognizable claims against them.

## Standard

### A. Rule 12(b)(1) standard for subject matter jurisdiction

Motions asserted pursuant to Rule 12(b)(1) challenge the Court's power to hear the claims before it. *Giandinoto v. Chemir Analytical Servs., Inc.*, 545 F. Supp. 2d 952, 956 (E.D. Mo. 2007). Plaintiff "has the burden of establishing that the Court has the requisite subject matter jurisdiction to grant the requested relief." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co.*

*of Am.*, 511 U.S. 375 (1994)).  If the court finds that jurisdiction is not present, it must dismiss the case.  Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999).  Where the court's jurisdiction is challenged based upon the face of the pleadings, the standard for determining the motion is the same as that which is applied for motions filed pursuant to Rule 12(b)(6).  *Giandinoto*, 545 F. Supp. 2d at 956.

## B.  Choice of law provisions

A federal district court applies the choice of law rules of the forum state. *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.*, 325 F.3d 1024, 1028 (8th Cir. 2003).  In tort cases, Missouri utilizes the Second Restatement's "most significant relationship" test. *Goede v. Aerojet Gen. Corp.*, 143 S.W. 3d 14, 24 (Mo. Ct. App. 2004).  Under this approach, the court looks to the following factors to determine the applicable state law:  "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) Conflict of Laws § 145.  Claims asserting breach of fiduciary duty, however, are governed by the law of the state of incorporation for the business entity involved.  In re *Farmland Indus., Inc.*, 335 B.R. 398 (Bankr. W.D. Mo. 2005) (citing *Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc.,* 690 S.W.2d 437, 444 (Mo. Ct. App. 1985)).  Under Missouri law, a conflict of laws does not exist "unless the interests of two or more states cannot be reconciled."  *Brown v. Home Ins. Co.*, 176 F.3d 1102, 1105 (8th Cir. 1999).

## C.  Rule 12(b)(6) standard for failure to state a claim

The court must dismiss a complaint if it fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In reviewing the adequacy of a complaint, the court assumes

that the factual allegations in the complaint are true and construes them in the light most favorable to the plaintiff. *Data Mfg, Inc. v. UPS, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). To survive a 12(b)(6) motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545) (internal citations omitted). A complaint that alleges only "naked assertion[s] devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

## Discussion

### I.     The Court possesses subject matter over the instant action.

Defendant FDIC-R first argues that the Court lacks subject-matter jurisdiction over Counts 1, 7, and 15 because these are new causes of action against FDIC-R, and, such claims were not exhausted during the administrative claims process as required by 12 U.S.C. § 1821(d)(3)(D).

The Court's jurisdiction over claims seeking payment from the assets of a closed bank institution is contingent upon exhausting the administrative claims process. *Brech v. CU Mortg. Direct, LLC*, Civ. No. 10-4123-KES, 2011 WL 486155, at *3 (D. S. D. 2011). Where the FDIC acts as receiver for a federally-insured failed institution, all claims must be submitted to the FDIC by the claims bar date before they can be asserted in court. *Brech*, 2011 WL 486155, at

*3; *see also* 12 U.S.C. §§ 1821(d)(3)-(13). "No court has jurisdiction over the claim until the exhaustion of the administrative process." *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1282 (9th Cir. 1994).[5]

The record is not clear on what claims were submitted during the administrative review process. Neither Plaintiffs nor Defendants provided the Court with a copy of the claims submitted during the administrative review process. Plaintiffs' failure to produce these materials stem from what they allege is the FDIC's failure to provide them with a copy of their claims. In Doc. 89, Plaintiffs state that "The plaintiffs as claimants were provided no recordation of their respective proof of claims during the electronic FDIC claims process and therefore are prejudiced at this stage of the proceeding, having no ability to provide this documentation to the Court as ordered or to brief the Court as to the content of any proof of claim." While the Court finds this argument compelling, it also notes that Plaintiffs did not retain a copy of the claims they submitted for themselves when the claims were initially filed.

The FDIC, the party most likely in a position to provide a copy of the claims submitted during the administrative process, gives no reason for failing to produce a copy of these claims. Rather than produce a copy of the claims submitted, Defendants merely argue that because Plaintiffs' Omnibus Petition asserts three claims against the FDIC which were not part of Plaintiffs' original or amended petition in state court, these claims were not brought as part of the administrative claims process.[6] However, this argument is purely conjecture and is without evidentiary support.

---

[5] The Court notes that the FDIC-R cited this quote to the case *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993) which is not accurate. The Court cautions the FDIC-R in the future to ensure the accuracy of their filings so as to not incorrectly cite relevant authority.
[6] Plaintiffs engage in a lengthy discussion of the difference between claims and causes of action:
    "The phrasing of the FDIC in comparing a proof of claim to counts 1, 7, and 15 under the framework of 'causes of action' is wholly ill suited for that analysis. The nomenclatures redefine what a FDIC 'proof of claim' is or must contain. The definition of 'claim,' as used in FIRREA, is not the definition of 'cause of'

Plaintiffs bear the burden to establish that jurisdiction exists here. *See Osborn v. United States*, 918 F.3d 635, 730 (8th Cir. 2003) (finding that the plaintiff bears the burden of proving that jurisdiction exists). While the FDIC has asserted that Plaintiffs bring additional claims which were not exhausted during administrative review, the FDIC has not provided any evidence to support this assertion. Accordingly, the Court finds it has jurisdiction over all counts asserted in the Omnibus Petition.

## II. The Court declines to engage in a choice of law analysis.

With regard to Plaintiffs' claims against Defendants for breach of fiduciary duty, Kansas law applies as Hillcrest Bank is a Kansas corporation. *See In re Farmland*, 335 B.R. at 404-05. To the extent that Counts 6 and 9 allege violations of Arizona statutes, Arizona law applies. With regard to all other claims, the Court declines to engage in a choice of law analysis because there is no apparent conflict between the laws of Kansas and Arizona.[7] *See Brown*, 176 F.3d at 1105.

## III. Plaintiffs adequately delineated the parties against whom each claim is brought.

Defendant FDIC-R argues that Plaintiffs' Omnibus Petition must be dismissed because it fails to name FDIC-R as a party. Specifically, Defendant FDIC-R claims it is unclear whether Plaintiffs' claims against Hillcrest Bank are claims against Hillcrest Bancshares, Hillcrest Banks' Board of Directors, or the FDIC-R as receiver for Hillcrest Bank. The Court finds no merit to this argument. Although Plaintiffs' Omnibus Petition alleges claims against Hillcrest Bank

---

action.' The analysis is not comparing a petition attached to a claim to those counts—rather the analysis is comparing the aggregate of facts implicated as between the claim and those counts" (Doc. 89, p. 1). The Court need not address this argument here where it has already decided there is no evidence that Plaintiffs did not properly pursue their administrative remedies prior to bringing the instant lawsuit.

[7] Based on an analysis of the Restatement factors, the Court finds that Kansas or Arizona law, and not the law of any other state, applies.

rather than FDIC-R, it is clear that the reference to Hillcrest Bank refers to allegations against FDIC-R as receiver.[8]

Moreover, the Court finds no merit to FDIC-R's contention that Plaintiffs' allegations are against FDIC-R in its corporate capacity and not in its capacity as receiver for Hillcrest Bank. The FDIC-R provides no evidentiary support for this argument, apart from citation to three paragraphs in the record, one of which does not even mention FDIC-R. Accordingly, all claims against Hillcrest Bank are construed as claims against FDIC-R in its capacity as receiver for Hillcrest Bank.

**IV**. **Plaintiffs' Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, and 16 fail to state claims upon which relief can be granted. Plaintiffs sufficiently state claims, in part, with regard to Counts 1 and 11.**

As a preliminary matter, Defendants FDIC-R, the Board of Directors, and Hillcrest Bancshares argue that the Court must dismiss Plaintiffs' Omnibus Petition because it is unclear, unnecessarily long, rambling, and does not clearly state a claim against them, in violation of the Court's May 18th Order. The Court finds it incredibly difficult to sift through Plaintiffs' 72 single-spaced pages and 340 numbered paragraphs to ascertain any coherent argument as to why FDIC-R, Hillcrest Bancshares, or the Board of Directors are liable. While it is questionable whether Plaintiffs' confusing and garbled Omnibus Petition complies with the Court's May 18th Order to provide a "*clear* and *concise*" statement of the case, the Court declines to dismiss the case on these grounds. However, finding that the Omnibus Petition fails to state a claim for

---

[8] The Court notes that all parties have taken an unnecessarily litigious approach to this case. Although Plaintiffs' complaint did not specifically list claims against FDIC-R, the Court finds it hard to imagine that Defendant FDIC-R was confused as to whom claims against Hillcrest Bank applied. Plaintiffs' Omnibus Petition listed claims against "Hillcrest Bank," "Board Members," and "Hillcrest Bancshares." Although Plaintiffs should have been clearer in delineating the parties, it is not difficult to ascertain that the claims Plaintiffs assert against "Hillcrest Bank" are those brought against FDIC-R in its capacity as receiver for Hillcrest Bank.

relief on Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, and 16, the Court dismisses those Counts under Rule 12(b)(6).

**A. Count 1: "Violation of Consumer Protection, Federal Law, Conversion, Breach of Fiduciary Duty, Invasion of Privacy, and Breach of Confidences"**

In Count 1, Plaintiff QCA alleges a number of theories under which Defendants FDIC-R and the Hillcrest Board of Directors are liable. Of these claims, the Court finds Plaintiff QCA has stated a claim only with regard to its action for conversion against Defendant Board of Directors.[9]

In Arizona, conversion is the "wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335 (Ariz. Ct. App. 1990) (citing *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 402 (Ariz. Ct. App. 1984)). In an action for conversion, a plaintiff must show that when the conversion occurred, the plaintiff was "in possession of the property or was entitled to the immediate possession thereof." *Empire Fire & Marine Ins. Co. v. First Nat. Bank of Ariz.*, 26 Ariz. App. 157, 159 (Ariz. Ct. App. 1976) (citing *Time Plans, Inc. v. Wornall Bank*, 419 S.W.2d 491 (Mo. Ct. App. 1967)). Conversion is similarly defined in Kansas as the "unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Snider v. MidFirst Bank*, 42 Kan. App. 2d 265, 271 (2009) (internal citations omitted).

Plaintiff QCA alleges liability against FDIC-R and the Board of Directors on the basis that Directors Degen, Wheeler, and Schneider, provided copies of Hillcrest Bank documents pertaining to QCA to their attorneys at Bryan Cave even though they were not authorized to

---

[9]Count 1 includes claims against Hillcrest Bank and the Board of Directors. The Court interprets the language of the Petition to state a claim for conversion only against the Board of Directors and not Hillcrest Bank.

remove the records from the bank premises (Petition, Doc. 56 at ¶ 167). Because Plaintiff properly alleges that the Board of Directors had no ownership interest in QCA's bank records and yet provided these records to a third party (Petition, Doc. 56 at ¶ 174), the Defendant Board of Director's motion to dismiss the conversion claim is denied.

Plaintiff QCA also alleges that Defendants are liable for breach of their fiduciary duties. However, Plaintiff does not plead any facts establishing that either Hillcrest Bank or its Board of Directors owed a fiduciary duty to Plaintiff. Specifically, Plaintiff QCA has failed to identify how the letters of credit granted to QGCC, identifying QCA as a third-party beneficiary, created any fiduciary duty owed by Hillcrest Bank or its Board of Directors to Plaintiff QCA or the individual investors in QGCC.

In support of its argument, Plaintiff QCA maintains that "Arizona statutes governing development of commercial property" create fiduciary duties regarding letters of credit (Petition, Doc. 56 at ¶ 191). However, Plaintiff does not identify this statute. And, an Arizona court has held that an individual's status as a third party beneficiary to a contract does not create a fiduciary duty absent an agreement between the parties. *See Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 87 (Ariz. Ct. App. 2005) ("A commercial contract creates a fiduciary relationship only when one party agrees to serve in a fiduciary capacity."); *Kesselman v. Nat'l Bank of Ariz.*, 188 Ariz. 419, 421 (Ariz. Ct. App. 1997) (upholding the trial court's decision that a bank "owe[s] no duty to disclose irregularities detected in a fiduciary account to third-party beneficiaries").

Here, Plaintiff QCA has cited no case law supporting its proposition that its status as a beneficiary of the letters of credit created a fiduciary duty owed to it by Hillcrest Bank or the Board of Directors. Moreover, Plaintiff has failed to show that Hillcrest Bank undertook to serve as a fiduciary to QCA with regard to the letters of credit. Finally, while Plaintiff QCA alleges

that it maintained a bank account at Hillcrest Bank, Plaintiff has not alleged facts showing that this relationship created any duty owed to QCA beyond maintenance of the account.

Under Kansas law, which governs here, the result is the same. One cannot unilaterally impose a fiduciary duty upon another "without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Denison State Bank v. Madeira*, 230 Kan. 684, 696 (1982). Here, there is no allegation that Hillcrest Bank agreed or led Plaintiff QCA to believe it would serve as a fiduciary to QCA with regard to the letters of credit, and Plaintiff has set forth no Kansas case law suggesting that Hillcrest Bank owed a duty to QCA based on the issuance of the letters of credit. Accordingly, the Court finds Plaintiff QCA has failed to allege necessary facts and law sufficient to show that Hillcrest Bank or its Board of Directors owed a fiduciary duty to them, and its claim for breach of fiduciary duty is dismissed.

The remainder of Plaintiff QCA's claims in Count I are also dismissed for failure to state a claim because Plaintiff fails to provide specific factual allegations to support the claimed violations. For example, Plaintiff asserts violations of "consumer protection" but fails to identify any statute that has been violated. Plaintiff also alleges breach of contract, breach of confidences, and invasion of privacy. However, Plaintiff provides no specific factual allegations relating to these counts. Additionally, although Plaintiff references six federal statutes and regulations, five of these statutes and regulations are standards established and enforced by federal regulatory authorities and do not create a private civil right of action. Plaintiff has not alleged facts demonstrating violation of the sixth.

**B. Count 2: "Interference with Contract & Intentional Interference with Business Relationship and Aiding and Abetting Intentional Interference with Business Expectancy and Contract"**

In Count 2, Plaintiffs essentially allege that Defendants' cancelation of certain letters of credit at the request of McClung caused McClung to breach his various loan agreements with Plaintiffs. Although the title of Count 2 identifies four different causes of action, the Court can ascertain only one cause of action from the facts alleged: tortious interference with a contract. To state a claim for tortious interference with a contract, Plaintiffs must establish "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferer, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 493 (Ariz. 2002).

Here, Plaintiffs fail to allege the necessary elements of the claim. Plaintiffs do not aver how Hillcrest Bank's failure to stop McClung from terminating irrevocable letters of credit was an intentional act to interfere with McClung's relationship with Plaintiffs. Furthermore, Plaintiffs provide nothing more than a conclusory allegation that this act had any causal relationship to McClung's breach of his various loan agreements with Plaintiffs such that Plaintiffs were damaged by Defendants' actions. This is insufficient to properly plead the element of damages. *Van Weelden v. Hillcrest Bank*, No. 2:10-CV-01833-PHX-JAT, 2011 WL 772522, at *5 (D. Ariz. Feb. 28, 2011). Finally, Plaintiffs have failed to show that Defendants acted improperly or that their motives were anything but self-interested. *Id.* ("There is no indication that [any] Defendant acted with an 'affirmative strategy' or an 'improper purpose' to

deprive Plaintiffs of a fully-completed infrastructure of their property."). For these reasons, Plaintiffs have failed to state a claim for tortious interference with a contract.

## C. Count 3: "Aiding and Assisting Hillcrest Bank, Quintero Golf and Country Club, and McClung in Breaching Their Respective Fiduciary Duties and Guaranteed Funding in the Letters of Credit"

Count 3 apparently seeks to hold the Defendant Board of Directors liable for assisting Hillcrest Bank, QGCC, and McClung in breaching their fiduciary duties through cancellation of the letters of credit. To state a claim for aiding and abetting, Plaintiffs are required to allege three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo*, 201 Ariz. at 485.

As the Court determined in Count 1, Plaintiff QCA has failed to allege any facts establishing that Hillcrest Bank or the Board of Directors owed QCA a fiduciary duty. Furthermore, Plaintiffs who are individual investors in QGCC have failed to allege how they, as third-party creditors of a contract, are owed a fiduciary duty by Hillcrest Bank or its Board of Directors. *See Speer v. Dighton Grain, Inc.*, 229 Kan. 272, 273 (1981) ("A creditor of an insolvent corporation who sues solely on his own behalf cannot maintain a personal action against directors or officers who, by negligent mismanagement of the corporation's affairs, have breached their duty to the corporation to the consequent damage or injury of its creditors."). Therefore, Plaintiffs' claim that the Board of Directors assisted Hillcrest Bank in breaching this duty is dismissed.

With regard to assisting McClung and QGCC in breaching their fiduciary duties, the Court similarly finds Plaintiffs' claim without merit. Although the Court questions whether McClung owed a fiduciary duty to Plaintiffs, *see Van Weelden,* 2011 WL 772522, at *4 (finding McClung owed no fiduciary duty to Plaintiffs under Arizona law), it need not decide that issue here. Regardless of whether McClung and QGCC owed Plaintiffs a fiduciary duty, Plaintiffs have failed to allege how Defendants' cancellation of letters of credit materially contributed to a breach of this duty. Therefore, this count is dismissed.

## D. Count 4: "Aiding and Abetting and Participating in Hillcrest Bank, Quintero Golf and Country Club, and McClung's Torts and Wrongdoing"

In Count 4, Plaintiffs essentially allege that every wrongdoing by any entity throughout the life of the Quintero project is the responsibility of the Defendant Board of Directors and that the Board of Directors should be liable for it. This Count relies on Plaintiffs' allegation that Hillcrest Bank fraudulently manipulated its accounting on the Quintero loans to assist McClung in his "fraudulent scheme."

As a preliminary matter, Plaintiffs have not sufficiently specified which torts Defendant Board of Directors aided and abetted. To state a claim for aiding and abetting, Plaintiffs are required to allege three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo*, 201 Ariz. at 485.

Here, Plaintiffs have failed to plead these elements because they fail to identify specific torts committed by McClung that the Board of Directors aided and abetted. More importantly, Plaintiffs have failed to allege facts supporting their assertion that the Defendant Board of

Directors had knowledge that they were assisting McClung in committing a tort.   While Plaintiffs make the conclusory statement that Defendants "had a general awareness" of McClung's "fraudulent scheme," (Petition, Doc. 56 at ¶ 211), there are no factual allegations supporting this conclusion.

Furthermore, to the extent Plaintiffs are pleading that Defendants aided and abetted McClung's fraud or misrepresentation, Plaintiffs have not pleaded these allegations with sufficient particularity as required by Rule 9, and, therefore, Count 4 fails to state a claim upon which relief can be granted.  *See Van Weelden*, 2011 WL 772522, at *6 ("Rule 9(b) requires that allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.") (internal citations omitted).

### E.  Count 5:  "Joint Enterprise, Conspiracy, and Concerted Action by Agreement"

In Count 5, Plaintiffs allege that the Defendant Board of Directors conspired with McClung in his "shady enterprise."  "For a civil conspiracy to occur two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo,* 201 Ariz. at 498 (quoting *Baker v. Stewart Title & Trust of Phoenix,* 197 Ariz. 535, 542 (Ariz. Ct. App. 2000)).  Essentially, "the individuals must agree and thereupon accomplish an underlying tort." *Van Weelden*, 2011 WL 772522, at *7 (citing *Wells Fargo*, 201 Ariz. at 498).

Here, Plaintiffs have identified no underlying tort which the parties conspired to commit. As Plaintiffs' allegations now stand, the agreement between the parties was simply to act unlawfully.  This is not sufficient to state a claim for civil conspiracy.  Rather, "[p]laintiffs must present clear and convincing evidence that there was an agreement to accomplish a specific tort."

15

*Van Weelden*, 2011 WL 772522 at *8. Furthermore, a claim of civil conspiracy requires a showing that a tort was actually committed, *Id.*, and Plaintiffs have similarly failed to plead this element.

**F. Count 6: "Breach of Fiduciary Duty, Aiding and Abetting Securities Fraud"**

In Count 6, Plaintiffs allege that the Defendant Board of Directors personally owed a fiduciary duty to QCA and that the Directors breached this duty by cancelling letters of credit issued by Hillcrest Bank to QCGG. This allegation, however, cannot support a claim for reasons discussed in Counts 1 and 3.

Also in Count 6, Plaintiffs allege that the Defendant Board of Directors aided and abetted securities fraud committed by McClung in his sale of "Revenue Membership Certificates."[10] To support this claim, Plaintiffs' petition references several statements made by McClung and then makes a conclusory allegation that McClung's statements "were material and were known to be false or untrue by McClung or were recklessly made without knowledge concerning them" (Petition, Doc. 56 at ¶ 124). Plaintiffs have not provided any factual support as to how McClung's statements were false or constituted fraud. In addition, Plaintiffs have not alleged that any of the statements McClung made were in connection with a sale of a Revenue Membership Certificate. Because of Plaintiffs failure to allege these elements with sufficient particularity, Count 6 does not satisfy the pleading requirements of Rule 9 and is dismissed.

In addition to failing to plead McClung's fraud with specificity with regard to the Membership Certificates, Plaintiffs have also failed to plead facts supporting that each of the Defendant Board of Directors aided and abetted *any* alleged fraud by McClung. Plaintiffs state

---

[10] The Court assumes that the "Revenue Membership Certificates" referenced in Count 6 are the same as the "Revenue Producing Membership Collateral Certificate and Agreement" that Plaintiffs reference numerous times in their Petition, Doc. 56, beginning at ¶ 77. These "Revenue Membership Certificates" allegedly were used as a way for some of the Plaintiffs to loan money to QGCC with McClung pledging repayment (Petition, Doc. 56, at ¶ 77).

that the Board of Directors was "generally aware" of McClung's alleged fraudulent plans and "encouraged him" to continue the project anyway (Petition, Doc. 56 at ¶ 254). These conclusory allegations provide no factual basis as to how the Board of Directors were aware of McClung's alleged fraud and are insufficient to state a claim. Because Plaintiffs fail to allege McClung's fraud with particularity and do not provide any basis as to how the Defendant Board of Directors aided and abetted the alleged fraud, Plaintiffs' claim for aiding and abetting securities fraud is dismissed.

### G. Count 7: "Conversion and Aiding and Abetting Conversion"

Count 7 is brought on behalf of Plaintiffs Kenneth Nichols and Larry Hilcher and asserts that Hillcrest Bank, with the assistance of the Defendant Board of Directors, converted money owed to Nichols and Hilcher.[11] Specifically, Plaintiffs Nichols and Hilcher allege that Hillcrest Bank "did not pay or otherwise deliver the money" (Petition, Doc. 56 at ¶ 256), and that the Board of Directors "voted or otherwise took decisions to keep the money rather than give it to Nichols and Hilcher" (Petition, Doc. 56 at ¶ 257).

Plaintiffs' Omnibus Petition, however, is contradictory on the facts of whether Hillcrest Bank actually received Plaintiffs' money. In the Omnibus Petition (Doc. 56 at ¶ 100), for example, Plaintiffs state that "the amounts may have been wired to Hillcrest," while elsewhere in the petition (Doc. 56 at ¶ 256), Plaintiffs state that "Hillcrest Bank received Nichols' and Hilcher's monies paid to Hillcrest Bank by FATCO." Furthermore, Plaintiffs have not pled sufficient facts to show how the Defendant Board of Directors aided and abetted Hillcrest Bank's alleged conversion. Accordingly, Plaintiffs' claims against Hillcrest Bank for conversion and against the Board of Directors for aiding and abetting conversion are dismissed.

---

[11] Plaintiffs Nichols and Hilcher allege they had valid liens on lots in the QGCC development, which QCGG allegedly sold in August and September 2004 (Petition, Doc. 56 at ¶ 99).

**H. Count 8: "Negligence, Assisting and Participating in the Negligence of Hillcrest Bank"**

In Count 8, Plaintiffs attempt to hold the Defendant Board of Directors liable on a theory of negligent management, arguing that if a director's management leads the corporation to act negligently, the individual directors are personally liable, even to non-customers for negligent management and supervision.  Plaintiffs cannot state a claim on this ground because Plaintiffs cannot establish the necessary predicate of this theory, that Hillcrest Bank was negligent.

In a claim of negligence, the plaintiff must allege "the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered." *Honeycutt By and Through Phillips v. City of Wichita*, 251 Kan. 451, 463 (1992) (quoting *McGee v. Chalfant,* 248 Kan. 434, 437 (1991)).  First, as discussed in Counts 1 and 3, Plaintiffs do not properly allege that the Board of Directors owed a general duty of care to them.

Moreover, even if there was a duty, Plaintiffs have failed to properly allege that the Defendant Board of Directors breached this duty.  Plaintiffs allege that the Defendant Board of Directors were aware of "red flags" that should have alerted each director of the problems with the Quintero loan, but Plaintiffs do not allege what the red flags were or how Hillcrest Bank or the Board of Directors are liable (Petition, Doc. 56 at ¶ 267).  The Court in *Dawson v. Withycombe*, 216 Ariz. 84, 110 (Ariz. Ct. App. 2007) held that the plaintiff must establish the direct involvement of the individual directors, officers, or shareholders in committing the alleged wrong.

Accordingly, Plaintiffs have failed to plead facts sufficient to establish a claim against the Defendant Board of Directors for negligence or for aiding and abetting negligence, and this claim is dismissed.

**I. Count 9: "Violations of Consumer Protection Law, Assisting and Participating in Violations of Consumer Protection Law"**

Count 9 alleges that Defendants violated Arizona consumer protection laws by assisting and participating in McClung's alleged fraud. Plaintiffs make reference to "Arizona Consumer Protection statutes," but do not identify any statutory provisions for this cause of action. By not identifying the specific statutory violations, Plaintiffs attempt to hold Defendants liable without giving Defendants notice of the claim. *See Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1183 (D. Ariz. 2009) (dismissing various claims for failure to cite to the specific claimed statutory violation). Plaintiffs' claim also fails because they have not met the Rule 9 requirement to plead with particularity any acts of fraud by McClung or the Defendants.

**J. Count 10: "Intentional Interference with Business Relationship"**

In Count 10, Plaintiffs allege that Defendant Hillcrest Bank's cancellation of certain letters of credit constituted intentional interference with the business relationship between Plaintiffs and McClung. To state a claim for intentional interference with a business relationship, Plaintiffs must establish "(1) the existence of valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bureau of Maricopa Cnty., Inc.*, 637 130 Ariz. 523, 530 (Ariz. 1981) (quoting *Calbom v. Knudtzon*, 65 Wash. 2d 157, 162-3 (1964)).

Similar to Count 2 against Defendant Board of Directors, Plaintiffs fail to allege the necessary elements of this claim. Plaintiffs allege there was a contract or valid business relationship between McClung and the Plaintiffs (element one) and that Hillcrest Bank was

aware of the relationship (element two). However, Plaintiffs' petition falls short of alleging intentional interference (element three), or, more specifically, how Hillcrest Bank's termination of the irrevocable letters of credit was an intentional act to interfere with McClung's relationship with Plaintiffs. For example, although the petition includes conclusory allegations that Hillcrest Bank "caused or induced" QGCC to breach its duties as a developer, there is nothing to suggest that Hillcrest Bank did so with the intent of inducing QGCC to breach its relationship with QCA. Plaintiffs also state only a conclusory allegation that they were damaged, which is insufficient to plead the element of damages. *See Van Weelden*, 2011 WL 772522 at *5. Because two required elements of Plaintiffs' claim are missing, Count 10 is dismissed.

### K. Count 11: "Breach of Contract"

Count 11 is brought by Plaintiff QCA against Defendant Hillcrest Bank for breach of contract. In a breach of contract claim under Arizona law, the Plaintiff must allege "(1) the existence of the contract, (2) its breach and (3) the resulting damages." *Graham v. Asbury*, 112 Ariz. 184, 185 (Ariz. 1975) (citing *Clark v. Compania Ganadera de Cananea, S.A.*, 95 Ariz. 90, 95 (Ariz. 1963). Kansas law requires similar elements: "(1) the existence of a contract between the parties, (2) sufficient consideration to support the contract, (3) the plaintiff's performance or willingness to perform in compliance with the contract, (4) the defendant's breach of the contract, and (5) damages to plaintiff caused by the breach." *City of Andover v. Sw. Bell Tel., L.P.*, 37 Kan. App. 2d 358, 362 (2007).

Plaintiff's petition alleges "there was a contractual relationship between Hillcrest and QCA who was the beneficiary of irrevocable letters of credit issued by Hillcrest Bank" (Petition, Doc. 56 at ¶ 287). This allegation satisfies element one of a breach of contract claim. Plaintiff also alleges that Hillcrest Bank breached the contract when Hillcrest Bank "failed to perform its

duties under the irrevocable letters of credit" (Petition, Doc. 56 at ¶ 289). Plaintiff QCA has, therefore, properly pleaded element two. Plaintiff QCA also alleges that it has been damaged as a result, and this is sufficient to satisfy element three of the claim. Because Plaintiff QCA has properly pled all the necessary elements of a breach of contract claim, Defendant Hillcrest Bank's motion to dismiss Count 11 is denied.

### L.  Count 12: "Negligence"

In Count 12, Plaintiff QCA alleges that Hillcrest Bank was negligent with regard to the canceling of letters of credit issued by Hillcrest Bank for the benefit of QCA. In a claim of negligence, the Plaintiff must allege "the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered." *Honeycutt*, 251 Kan. at 463 (quoting *McGee v. Chalfant,* 248 Kan. 434, 437 (1991). However, like Count 8 against the Board of Directors, Plaintiff QCA fails to allege any plausible theory under which Hillcrest Bank owes it a duty "to exercise reasonable care" regarding the issuance of the letters of credit. Having failed to properly allege this element, the Court finds Plaintiff QCA has failed to state a claim against the FDIC-R for negligence.

### M. Count 13: "Aiding and Abetting McClung"

In Count 13, Plaintiffs allege that Defendant Hillcrest Bank aided and abetted QGCC and McClung's torts, wrongdoing, and violations. While the Omnibus Petition states many torts for which McClung may be responsible, Plaintiffs fail to identify any specific torts or legal violations in this count. Thus, Plaintiffs' petition gives Defendant Hillcrest Bank no basis upon which to assert a defense and fails to state a claim upon which relief can be granted.

### N.  Count 14:  "Aiding and Abetting McClung's Fraud"

Plaintiffs' claim against Hillcrest Bank for aiding and abetting McClung's fraud[12] fails for the same reason Plaintiffs' claim against the Board of Directors (Count 4) failed:  Plaintiffs have not pleaded these allegations with sufficient particularity as required by Rule 9.  *See Van Weelden*, 2011 WL 772522, at *6 ("Rule 9(b) requires that allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.") (internal citations omitted).

Furthermore, Plaintiffs have not met the pleading requirements for elements two and three of an aiding and abetting claim: that Defendant Hillcrest Bank knew McClung's conduct constituted a breach of duty and that it substantially assisted in this breach.  While Plaintiffs allege that "Hillcrest Bank was aware of or willfully blind to the misrepresentations of McClung to the plaintiffs and other Quintero Entity investors" (Petition, Doc. 56 at ¶ 305) and that "Hillcrest Bank actively participated or substantially assisted in or encouraged the breach to the degree that Hillcrest Bank could not reasonably be held to have acted in good faith" (Petition, Doc. 56 at ¶ 311), these conclusory allegations cannot support Plaintiffs' aiding and abetting claim.

### O.  Count 15:  "Joint Enterprise Conspiracy Concerted Action by Agreement"

Plaintiffs' claim of conspiracy against Defendant Hillcrest Bank is dismissed for the same reasons that Plaintiffs' claim of conspiracy against the Defendant Board of Directors (Count 5) is dismissed.  "For a civil conspiracy to occur two or more people must agree to accomplish an

---

[12] Again, to state a claim for aiding and abetting, plaintiffs must allege three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo*, 201 Ariz. at 485.

unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." *Wells Fargo*, 201 Ariz. at 493 (quoting *Baker*, 197 Ariz. at 542). Essentially, "the individuals must agree and thereupon accomplish an underlying tort." *Van Weelden*, 2011 WL 772522, at *7 (citing *Wells Fargo*, 201 Ariz at 493). Plaintiffs fail to identify any underlying tort that the Defendant Hillcrest Bank and McClung conspired to commit. While Plaintiffs allege the parties had an agreement to act unlawfully, Plaintiffs have not alleged any specific torts the parties agreed to commit. Without an agreement to accomplish a specific tort, Plaintiffs do not have a claim for conspiracy.

## P. Count 16: "Tortious Interference with Contracts, Aiding and Abetting Hillcrest Bank's and McClung's Tortious Conduct"

Count 16 first alleges liability against Defendant Hillcrest Bancshares for tortious interference with contracts. Specifically, Plaintiffs allege, among other things, that Hillcrest Bancshares manipulated the Quintero loan and the Hillcrest Bank's books to bolster McClung's allegedly false representations about the viability of his development (Petition, Doc. 56, at ¶ 337). However, although Plaintiffs list a variety of common "goals" between Hillcrest Bancshares, Hillcrest Bank, and McClung, Plaintiffs do not allege any specific facts illustrating how Hillcrest Bancshares had any direct interference with the ongoing business between McClung and any other entities.

Plaintiffs also allege that Defendant Hillcrest Bancshares aided and abetted Hillcrest Bank's and McClung's tortious conduct, including aiding and abetting tortious interference with contract and business expectations, fraud, and breach of fiduciary duty. However, again, Plaintiffs' allegations are conclusory at best. Although Plaintiffs list conclusory statements of alleged wrongs committed by Hillcrest Bank, Plaintiffs fail to specify Hillcrest Bancshares involvement in these wrongs apart from its ownership of Hillcrest Bank. Furthermore, Plaintiffs'

petition does not allege an important element of an aiding and abetting claim, which is that Defendant Hillcrest Bancshares knew that the McClung's and Hillcrest Bank's actions were a breach of duty.

The only way under which the Court could possibly conceive Plaintiffs *might* have a claim against Defendant Hillcrest Bancshares is under a theory of piercing the corporate veil. However, Plaintiffs assert that "Count 16 does not depend at all on a piercing of the corporate veil theory" (Doc. 73, at 23) and the Court agrees that such an argument would be meritless.[13] For these reasons, Count 16 is dismissed.

### Conclusion

Having thoroughly sifted through the long, rambling, and often incoherent allegations set forth in Plaintiffs' Omnibus Petition, the Court finds Plaintiffs have failed to state a cognizable claim against Defendant FDIC, Defendant Board of Directors, and Defendant Hillcrest Bancshares on Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, and 16. However, having properly stated a claim for conversion against the Defendant Board of Directors in Count 1 and a claim for breach of contract against Defendant Hillcrest Bank in Count 11, Defendants' motions to dismiss with regard to those motions are denied.

---

[13] For Plaintiffs' allegations under Count 16 to be maintained under a theory of piercing the corporate veil, Plaintiffs must establish that "(1) the corporation is the alter ego or business conduit of a person," and that (2) "to observe the corporation would work an injustice." *Dietel v. Day*, 16 Ariz. App. 206, 208(1972). To support their claim, Plaintiffs allege that Hillcrest Bancshares "controlled and had complete domination" of Hillcrest Bank, which "had no separate mind, will or existence of its own" (Petition, Doc. 56 at ¶ 29). However, Plaintiffs fail to allege any facts establishing that the purpose of Hillcrest Bank was to act as the alter ego of Hillcrest Bancshares or that Hillcrest Bank was used to shield Hillcrest Bancshares from individual tort liability. Plaintiffs also fail to establish the second element because they have not pleaded any facts indicating that upholding Hillcrest Bancshares' corporate status would constitute an injustice. Additionally, because this Court has already dismissed Plaintiffs' claims for tortious interference with contract and business expectations, fraud, and breach of fiduciary duty, Plaintiffs have no underlying tort claim against Defendant Hillcrest Bancshares to impose liability through a claim of piercing the corporate veil.

**IT IS SO ORDERED.**

Date: <u>January 3, 2013</u>

<u>    /s/ Greg Kays                 </u>
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT