IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| QUINTERO COMMUNITY ASSOCIATION, INC., et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 04-11-CV-00893-DGK |
| HILLCREST BANK, et al., | ) ) | |
| Defendants. | ) | |

## **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This case arises from Plaintiffs' losses sustained from their investment in, and purchase of, property at a failed golf course development owned and operated by Gary McClung and his related companies and entities. Plaintiffs, who include individual investors and the Quintero Community Association ("QCA"), initially sued various entities, including Hillcrest Bank, Hillcrest Bancshares, and the officers and directors of both under a variety of legal theories. The sole remaining claim is one by QCA against the former board of directors and officers of Hillcrest Bank and Hillcrest Bancshares (the "Defendants") for conversion (Count 1).

Now before the Court is Defendants' Motion for Summary Judgment (Doc. 143). For the reasons articulated below, the Court GRANTS Defendants' motion.

### **Procedural Background**

The following provides the procedural context for the instant motion. Plaintiffs were purchasers of, and investors in, property belonging to an Arizona golf course community development, Quintero Golf and Country Club, LLC ("QGCC"), initiated by Gary McClung and his related companies (the "McClung Entities"). Some, but not all, individual Plaintiffs were also members of Plaintiff QCA, an Arizona non-profit which itself owns property in the QGCC.

Defendants Hillcrest Bank and Hillcrest Bancshares, the corporation which held all the stock in Hillcrest Bank, were also investors in QGCC, having lent over $50,000,000 to the McClung Entities. The McClung Entities' golf course project eventually failed, causing Plaintiffs to sustain significant financial losses.

Plaintiffs filed two separate actions in the Circuit Court of Jackson County, Missouri: one action against Hillcrest Bank and another against Defendants and Hillcrest Bancshares. On March 1, 2011, after the Federal Deposit Insurance Corporation ("FDIC") took over Hillcrest Bank as receiver for the failed institution, the state court substituted FDIC for Hillcrest Bank. Then, on April 21, 2011, the state court consolidated the two cases into one action. FDIC removed the lawsuit to this Court, and the Court denied Plaintiffs' motion to remand on December 6, 2011 (Doc. 13).

On June 12, 2012, Plaintiffs filed an amended complaint (the "Complaint") (Doc. 56) against FDIC as receiver for Hillcrest Bank (hereinafter "FDIC-R"), Hillcrest Bancshares, and Defendants under a variety of theories. Subsequently, the Court dismissed fourteen of the sixteen counts, leaving only two claims asserted by QCA, with one against FDIC-R for breach of contract (Count 11) and another against Defendants for conversion (Count 1). On December 13, 2013, Defendants filed a Motion for Summary Judgment (Doc. 143), and shortly thereafter, FDIC-R filed a Motion to Dismiss for Lack of Jurisdiction (145).

Recently, the Court dismissed the breach of contract claim against FDIC-R on prudential mootness grounds, but it retained supplemental jurisdiction over the conversion claim against the Defendants (Doc. 159). Now it addresses Defendants' motion for summary judgment on the conversion claim.

**Undisputed Material Facts**

The undisputed material facts are as follows.[1] At all times relevant to the conversion claim, Defendants either served on the board of directors or were officers of Hillcrest Bank, a Kansas chartered financial institution. In September 2010, prior to Hillcrest Bank entering receivership, several of these directors and officers retained the law firm of Bryan Cave, LLP to defend against potential claims arising from their employment with Hillcrest Bank. This group (the "Client Group Defendants") included: Tim Gervy, Scott I. Asner, Robert J. Campbell, G. Richard Degen, Irwin Blitt, George A. Lieberman, Jack N. Fingersh, Paul S. Fingersh, Gerald M. White, Brian K. Schneider, Jeffrey F. Wheeler, and Sue Gallatin. Non-Client Group Defendants include: Jon Forgey, Nicole Davis, Wanda Holdeman, Joel Richards, Thomas Davies, and Dan Schwartzkopf.[2]

In late September 2010, during an investigation into Hillcrest Bank's lending practices but prior to being formerly substituted as receiver for Hillcrest Bank, the FDIC requested all Hillcrest Bank loan documents. As a result of this request, Hillcrest Bank employee Charlene Gordon copied all loan files onto an electronic portable hard drive. Gordon also made Hillcrest Bank a duplicate copy of the loan files on another portable hard drive. On October 4, 2010, Client Group Defendant, and then-President of Hillcrest Bank, Brian K. Schneider instructed Gordon to provide Bryan Cave with the duplicate portable hard drive. After making a third copy of original loan documents, Gordon sent the portable hard drive to Bryan Cave.

---

[1] The Court has omitted properly controverted facts, asserted facts that are immaterial to the resolution of the pending motion, asserted facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

[2] The Court differentiates between the Client Group Defendants and the non-Client Group Defendants because the non-Client Group Defendants raise a basis for summary judgment that is inapplicable to the Client Group Defendants.

Likewise, from late September to mid-October, two other Client Group Defendants made similar requests. Over this period, Defendants G. Richard Degen and Jeffrey Wheeler directed Hillcrest Bank employees to copy various Hillcrest Bank files, including employee emails, onto electronic storage discs. After the copying, Degen and Wheeler instructed the employees to send the discs to Bryan Cave.

All copying occurred entirely at the Hillcrest Bank offices in Kansas. And as the copying related to Bryan Cave's defense of the Client Group Defendants, none of the non-Client Group Defendants participated in the copying and transferring of the bank records.

On November 5, 2010, the Client Group Defendants terminated Bryan Cave as counsel. Shortly thereafter, on November 8, 2010, Bryan Cave returned the electronic copies to Client-Group Defendant Tim Gervy, who then took the documents to the Client Group Defendant's new attorneys at Rouse Hendricks German May, P.C. ("Rouse Hendricks"). After receiving the portable hard drive and electronic storage discs, Rouse Hendricks delivered them to the successor of Hillcrest Bank, NBH Holdings.

## Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, but "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031,

1042 (8th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Once the moving party has satisfied his or her initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set forth specific facts showing there is a genuine issue for trial, *Anderson*, 477 U.S. at 248, but the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 585 (2009)).

## Discussion

### I. Kansas law applies to QCA's conversion claim.

Before the Court can determine whether Defendants are entitled to judgment as a matter of law, the Court must first identify what state's law applies. Because the conversion claim is a supplemental state law claim, Missouri's choice-of-law rules guide this inquiry. *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006) ("When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit." (internal quotation marks and citation omitted)). To determine what states law governs in tort cases, Missouri applies the "most significant relationship" approach from section 145 of the Restatement (Second) of Conflict of Laws. *Am. Guarantee & Liab. Ins. Co. v. United States Fidelity & Guar. Co.*, 668 F.3d 991, 996 (8th Cir. 2012). Under

5

this section, a court considers: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and the (4) the place where the relationship, if any, between the parties is centered." *Id.* After ascertaining the number and degree of these contacts, the court must analyze them in light of the overarching choice-of-law principles set forth in section 6(2) of the Restatement. *Id.*

In an earlier order, this Court conducted an initial choice-of-law analysis and concluded that either Kansas or Arizona law applied to the conversion claim (Doc. 91 at 7, n.7).[3] Now, the Court must determine whether Kansas or Arizona law governs QCA's conversion claim. Defendants contend—and QCA does not dispute—that the Restatement factors support the application of Kansas law.

On a balance, the section 145 factors weigh in favor of applying Kansas law. First, the injury occurred in Kansas. Although no Missouri court has addressed the place of injury for conversion claims, several courts deciding this issue have held that the injury arises in the state where the defendant exercised dominion and control over the objects. *Charash v. Oberline Coll.*, 14 F.3d 291, 297 (6th Cir. 1994); *see Robb v. Universal Constructors, Inc.*, 665 F.2d 998, 1001 (10th Cir. 1981). Here, assuming for the sake of argument that Defendants exercised dominion and control over the bank records sufficient to cause a conversion injury, the injury took place in Kansas when Defendants ordered the copying and removal of the records from the bank.

---

[3] In reaffirming this initial conclusion, the Court notes that the only other state's law which could conceivably apply is the forum state's law, Missouri. QCA's Complaint alleges that all torts in the petition arose under either Missouri or Arizona law (Doc. 56 at 6). In its most recent briefing, however, QCA apparently abandons this contention because it now argues that its claim should survive regardless of whether Arizona or *Kansas* law applies (Doc. 149 at 5-6). Consequently, it appears that both parties agree that Missouri law is inapplicable. The undisputed facts now presented to the Court also support this conclusion. None of the section 145 Restatement factors—except domicile of some of the Defendants—weighs in favor of applying Missouri law, thus the Court once again holds that Missouri law does not apply to QCA's conversion claim.

6

Case 4:11-cv-00893-DGK   Document 160   Filed 05/02/14   Page 6 of 16

Dovetailing off the first factor, the second factor also supports the application of Kansas law because all copying and transfer of bank records occurred in Kansas.

The third factor favors neither state. On the one hand, QCA is a non-profit Arizona corporation (Doc. 56 at 3). Defendants, however, are evenly domiciled between Kansas and Missouri (Doc. 56 at 3-4). Similarly, the parties' places of business are split between Arizona and Kansas. Thus, this factor provides little assistance in the Court's analysis.

The fourth and final factor favors application of Kansas law. Although the failed golf course giving rise to the entire lawsuit is situated in Arizona, the parties relationship as it pertains to the conversion claim is centered in Kansas. The Kansas-based Hillcrest Bank contracted with Quintero Golf & Country Club through its agent Gary McClung to provide QCA with a letter of credit for the golf club investment. While it is unclear where the parties consummated this loan agreement,[4] Hillcrest Bank maintained all documents allegedly pertaining to this agreement in Kansas. Thus, as best the Court can tell from the scant facts provided, the lender-lendee relationship that sparked the conversion claim was centered in Kansas. Accordingly, the section 145 factors suggest Kansas boasts the most significant relationship to the conversion claim.[5]

This conclusion is also consistent with the choice-of-law principles embodied in section 6 of the Restatement (Second). *See Am. Guarantee and Liab. Ins. Co.*, 668 F.3d at 996. This case appears to only implicate one factor under section 6: "the relevant policies of other interested

---

[4] Neither party provided facts concerning where the parties finalized the agreement and the other record documents, including the Complaint, do not provide any meaningful clarification. *See* (Doc. 56 at 5) (suggesting that some or all of the contracts *may* have been executed in Missouri).

[5] In cases involving personal injury, Missouri courts apply section 146 of the Restatement which establishes a presumption of applying the law of the state in which the injury occurs. *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1359 (8th Cir. 1994). Section 147 of the Restatement (Second) contains a similar presumption for property torts. No Missouri court has explicitly adopted this Restatement section. Thus, the Court does not rely on it in analyzing what law applies to QCA's claim. However, even assuming that this section applied, the Court's conclusion would be the same, because the injury occurred in Kansas, and the analysis of the section 145 factors does not overcome the presumption that Kansas law applies.

7

states and the relative interest of those states in the determination of the particular issue." Restatement (Second) of Conflict of Laws § 6(2)(c) (1971); *see Am. Online, Inc. v. Nat'l Health Care Disc., Inc.*, 121 F. Supp. 2d 1255, 1270 (N.D. Iowa 2000). Without a doubt, Arizona possesses an interest in protecting its citizens and corporations from tortious conduct, such as conversion, by out-of-state actors. These interests, however, are in no way undermined by the application of Kansas law because Arizona conversion law essentially overlaps with Kansas conversion law. *Compare Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990) (establishing elements of conversion), *with Snider v. MidFirst Bank*, 211 P.3d 179, 183 (Kan. Ct. App. 2009) (establishing similar elements for conversion under Kansas law). As Kansas conversion law effectively proscribes the same tortious conduct as Arizona conversion law, its application will not adversely affect QCA's rights. Moreover, Kansas also maintains a strong interest in regulating the conduct of those within its borders. For these reasons, the principles in section 6 also support application of Kansas law.

As Kansas boasts the most significant relationship to QCA's conversion claim,[6] the Court applies Kansas law to decide Defendants' motion.

## II. Defendants are entitled to summary judgment on the conversion claim.

Under Kansas law, "conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005). Thus, to prevail on a conversion claim a plaintiff must prove, among other elements, that (1) it possesses a right

---

[6] There are no on-point cases applying Missouri choice-of-law principles to decide what state's law applies to a conversion claim. To the extent that this lack of law obscures the Court's ability to precisely identify the state with the most significant relationship to the claim, the Court notes that Missouri applies a default rule in such a situation. Where the Restatement analysis yields no definitive answer, the law of the state in which the tort occurred applies. *See Kennedy v. Dixon*, 439 S.W.2d 173, 185 (Mo. 1969) (stating the default rule is the place where the tort occurred). In this case, the tort occurred in Kansas, thus even under this default analysis Kansas law applies.

8

in the goods or personal chattels; and (2) that the defendants exercised control over the goods or chattel to the *exclusion* of the plaintiff's right. *See In re Bratt*, 491 B.R. 572, 578 (Bankr. D. Kan. 2013) (stating that a plaintiff must demonstrate that it possesses a right in the goods or chattel); *Bank v. Parish*, 264 P.3d 491, 498 (Kan. Ct. App. 2011) (stating possession to the exclusion of the rightful owner as an element of conversion); *Snider*, 211 P.3d at 183 (same); *IBD, Inc. v. Enter. Bus. Solutions, LLC*, No. 99,201, 2009 WL 929072, at *5 (Kan. Ct. App. Feb. 4, 2010) (citing *Bomhoff*, 109 P.3d at 1246) (explaining that despite some Kansas appellate courts leaving out the exclusion element it remains an essential element of conversion in Kansas).

Defendants contend they are entitled to summary judgment because the undisputed facts fail to satisfy these two elements. In particular, Defendants assert that QCA's claim fails because (1) QCA does not have a property interest in the Hillcrest Bank records, and (2) even if QCA enjoyed a property interest in the bank records, Defendants copying of the records did not deprive QCA of its right of possession. As an alternative basis for summary judgment, the non-Client Group Defendants argue that they never participated in the copying or transfer of the bank records. For this reason, they conclude that regardless of whether a conversion occurred, they are still entitled to summary judgment. The Court addresses each basis separately below.

### A. QCA cannot demonstrate it possesses a property interest in the copied bank records.

Defendants contend that Hillcrest Bank, not QCA, owned the bank records which Defendants copied. QCA counters that it enjoys an intangible right in the bank records, which

9

according to QCA, is a sufficient property interest under Kansas law to sustain a claim for conversion.[7]

Although never addressed by the Kansas Supreme Court, Kansas appellate courts have allowed claims for the conversion of intangible rights. *Near v. Crivello*, 673 F. Supp. 2d 1265, 1282 (D. Kan. 2009). To have an intangible property right amendable to conversion, however, this right must also be accompanied by a present property interest. *See id.* (deriving this rule from analyzing Kansas Court of Appeals' cases). For instance, in *Farmers State Bank v. FFP Operating Partners, L.P.*, the Kansas Court of Appeals found that a plaintiff's perfected security interest—an intangible right—was subject to conversion because it presented the plaintiff with an immediate possessory right in the collateral secured by the instrument. *See* 935 P.2d 233, 235-36 (Kan. Ct. App. 1997).

QCA contends that it has an intangible interest in the bank records because it possesses a privacy interest in the confidential information contained in these records. To reach this conclusion, QCA relies on a Hillcrest Bank employment contract and a federal law. The contract is one that Hillcrest Bank required all of its officers and directors to sign, and it contains a confidentiality provision prohibiting employees from copying or disseminating confidential information (Doc. 149, Ex. 3 at 82). With respect to the federal law, QCA cites the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801(a), which states that financial institutions have an affirmative duty to protect customer's nonpublic confidential information. According to QCA, when woven together, these provisions endow it with a present interest in the confidential information located at Hillcrest Bank, and therefore, also an intangible right in the bank records containing this information. This argument is unavailing.

---

[7] Nowhere in its briefing does QCA contend that it possesses any right in the bank records as tangible property. Rather, QCA summary judgment response merely asserts that it possesses an intangible right in the bank records. *See* (Doc. 149 at 6) ("The QCA, as a bank customer, has an intangible right in its bank records.").

10

QCA has not demonstrated that it has a present *property* interest in the confidential information. Both the contract and the statute impose a duty on banks and its employees to keep customer information confidential, with the obvious objective being the protection of customers' privacy. Thus, at best, these documents impliedly establish that bank patrons, such as QCA, have a *privacy* interest in the confidential information located in bank records. Having a privacy interest in personal information, however, does not necessarily mean that QCA has a present property interest in that same information. *See Hanson v. Hancock Cnty. Mem'l Hosp.*, 938 F. Supp. 1419, 1439 (N.D. Iowa 1996) ("Hanson fails to adduce any authority whatsoever that her privacy interest is in fact 'generally protected as personal property' at all."). And by failing to provide any evidence that it has a property interest in the confidential information, it cannot show that it has any intangible right in the bank records.

Because the undisputed material facts establish that QCA did not possess a property interest in the bank records, the Court finds that Defendants are entitled to summary judgment.

**B. Defendants never exercised exclusive possession over the bank records.**

As a second basis for summary judgment, Defendants contend—and QCA does not dispute—that even if QCA possessed a property interest in the bank records, Defendants copying of documents and transfer of the electronic copies never interfered with QCA's alleged rights. The Court agrees.

For a conversion to be actionable under Kansas law, a plaintiff must demonstrate that the defendant's use or control of the property prevents it from exercising control over the property. *Paradigm Alliance, Inc. v. Celeritas Tehcs., LLC.*, 659 F. Supp. 2d 1167, 1189 (D. Kan. 2009) (citing *Bomhoff*, 109 P.3d at 1246). When both the defendant and plaintiff can effectively assert dominion and control over the property simultaneously, a claim for conversion fails. *DIRECT*

11

*TV, Inc. v. Lockwood*, 311 F. Supp. 2d 1147, 1150 (D. Kan. 2004) (dismissing a conversion claim for a defendant's alleged interception of satellite signals because defendant's control over the satellite signals did not interfere with the plaintiff's use); *see also IBD, Inc.*, 2009 WL 929072, at *6 (finding that defendants converted plaintiff's software when it copied it *and* effectively blocked plaintiff from accessing or selling the software). In fact, the Kansas Court of Appeals has specifically held that the copying of documents and removal of those copies does not constitute conversion because the plaintiff may still access the original documents. *Moeller v. Kain*, No. 98,531, 2008 WL 4416042, at *6 (Kan. Ct. App. Sept. 26, 2008).[8]

Here, even assuming that QCA possessed any property interest in the bank records, the Court holds that Defendants' copying of the documents and removal of the copies did not exclude QCA's right of possession. The Client Group Defendants only ordered the sending of electronic copies of the bank records to Bryan Cave. At all times relevant to the lawsuit, the original records remained with Hillcrest Bank. Thus, throughout the copying and transfer process, QCA retained the ability, through Hillcrest Bank, to access the records and the content contained therein. Because the Client Group Defendants exercise of dominion and control over the copied records did not deprive QCA of its ability to access them, they are entitled to summary judgment on this alternative basis.

---

[8] The Court acknowledges that pursuant to Kansas Supreme Court Rule 7.04(f) this opinion is merely persuasive authority on this issue. However, the Court also finds that if confronted with this exact issue, the Kansas Supreme Court would rule similarly to the *Moeller* court. As noted earlier, the Kansas Supreme Court requires that a conversion must be to the exclusion of the other's rights. *Bomhoff,* 109 P.3d at 1246. The *Moeller* court's reasoning aligns with this general element. In *Moeller*, the defendant made copies of physical documents located at the parties' shared place of business. 2008 WL 4416042, at *6. In holding that this did not constitute conversion, the court reasoned that despite defendant's copying of the documents, plaintiff was not excluded from accessing the originals. *Id.* As this opinion relies upon, and reinforces, the exclusion requirement set forth in *Bomhoff*, the Court finds *Moeller* highly persuasive and instructive on how the Kansas Supreme Court would rule in these circumstances.

Since the Court finds that the first two arguments advanced by the Client Group Defendants provide sufficient alternative bases for summary judgment, it does not address their remaining arguments.[9]

### C. The non-Client Group Defendants are entitled to summary judgment on an alternative basis.

The non-Client Group Defendants contend they are entitled to summary judgment because the undisputed facts demonstrate that they never participated in the alleged conversion. In its response to Defendants' statement of facts, QCA admits that the non-Client Group Defendants never participated in the alleged tortious conduct. In its briefing, however, QCA retracts this admission by claiming that the facts only establish that Bryan Cave did not represent these Defendants.

The Court finds this attempt to avoid summary judgment unavailing. Defendants put forth an affidavit from Defendant Degen which explicitly stated the non-Client Group Defendants never "participated in copying any electronic files, preparing the portable hard drive and electronic storage discs, or providing any materials to Bryan Cave" (Doc. 144, Ex. 1 at 2). Movants included this assertion in its statement of uncontroverted facts, (Doc. 144 at 4), and QCA explicitly admitted this fact in its response (Doc. 149 at 3). Because it previously conceded this fact, the Court will not allow it to maneuver around this admission. *See RSBI Aerospace, Inc.*, 49 F.3d at 402 (noting a party cannot avoid summary judgment simply through creating sham issues of fact). Even if the Court were inclined to do so, QCA presents no evidence to

---

[9] Even if Arizona law applied, the Court would reach the same conclusion. *See Miller v. Helen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (holding that for an intangible right to be subject to conversion it must be "merged with a document in the same sense as a stock certificate or an insurance policy."); *Focal Point, Inc. v. U-Haul Co. of Ariz, Inc.*, 746 P.2d 488, 489-91 (Ariz. Ct. App. 1986) (holding that for a conversion action to lie a defendant's action must result in more than a temporary interference with a plaintiff's right of possession).

counter Defendants' affidavit. Accordingly, the Court treats this as an undisputed fact which entitles the non-Client Group Defendants to summary judgment on this alternative basis.

> **D. QCA is not entitled to an adverse inference based upon Defendants' alleged spoliation, and QCA is denied leave to amend its complaint to include a new claim for spoliation.**

QCA requests the Court entertain an adverse inference against Defendants based upon their alleged encryption of the portable hard drive and electronic storage discs. Even if the Court denies this inference, QCA requests leave to amend its complaint to include a new tort claim for spoliation. The Court denies both requests.

To provide context for these arguments, a short overview of prior discovery issues is necessary. During the course of discovery, QCA requested electronic and paper discovery regarding the Quintero loan, including three electronic files on the electronic storage discs purportedly copied by the Client Group Defendants (Doc. 115). Although FDIC-R was able to locate the three electronic files located on the electronic storage discs, it was unable to access the files because the three discs were passphrase encrypted (Doc. 136). In an attempt to access the discs, FDIC-R contacted several companies to inquire about the feasibility of unencrypting them, but all the companies told FDIC-R it would be nearly impossible (Doc. 136). FDIC-R also contacted "[Rouse Hendricks], prior employees of [Hillcrest Bank], the assuming institution Bank Midwest, current counsel for the co-defendants, and Bryan Cave," but none of the entities could locate the passphrase for the electronic storage discs (Doc. 141).

QCA now contends that the Client Group Defendants, Rouse Hendricks, or Bryan Cave encrypted the discs to prevent QCA from accessing the information. QCA contends that this amounts to destruction of evidence, thereby entitling it to an inference that the discs contained evidence relevant to its claim. The Court disagrees.

14

As a matter of law, a presumption of spoliation only arises when there is evidence of "intentional destruction indicating a desire to suppress the truth." *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012). QCA has not provided the court with sufficient evidence that Defendants, or their attorneys, placed the passwords on the discs, let alone evidence that these actors did so to intentionally block QCA's access. Thus, it has not shown *intentional* destruction of the discs. *See Rock v. Smith*, No. 10-CV-00163-JEG, 2013 WL 6247449, at *4 (N.D. Iowa July 15, 2013) ("An adverse inference instruction is not appropriate when evidence is lost or destroyed and the court is unable to determine the evidence is intentionally destroyed."). Since QCA has failed to carry its burden of demonstrating intentional destruction, the Court finds that it is not entitled to an adverse inference.

Finally, QCA requests leave to amend its petition to include a claim against Defendants for spoliation. QCA contends that under Kansas law a plaintiff may bring a tort claim for spoliation. Since the spoliation claim arose during this litigation, QCA asserts that the interests of justice support amending the petition to include this new claim. The Court disagrees.

Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its complaint with the "court's leave," and the "court should freely give leave when justice so requires." Generally, the Court should grant leave to amend unless "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (internal quotation marks and citation omitted).

The Court finds that the exceptions to the liberal amendment policy favor denial of plaintiff's request. First, QCA's timing suggests undue delay. Although QCA was made aware

15

of the encryption issue in October 2013 at the latest, it did not seek leave to amend until it filed its motion in opposition to summary judgment on January 14, 2014, nearly two months after the discovery deadline passed. Second, this delay in filing also places undue prejudice on Defendants, because they have already conducted discovery and spent a significant amount of time crafting a summary judgment motion based upon the current petition. Allowing QCA to amend at this juncture would require further discovery and dispositive motion practice, thereby requiring Defendants to incur further attorneys' fees. Finally, it appears that the amendment would be futile. Plaintiff suggests that a tort for spoliation is possible, but it does not provide the Court with definitive legal authority that a cause of action actually exists under Kansas law. Accordingly, the Court declines to grant QCA leave to amend its petition.

## Conclusion

For the foregoing reasons, the Court finds that all Defendants are entitled to summary judgment. Accordingly, the Court GRANTS Defendants' motion for summary judgment. The Court also DENIES QCA leave to amend its petition to include a spoliation claim.

**IT IS SO ORDERED**.

Date: <u>May 2, 2014</u>  /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT